

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BILLY J. MULLINS, JR. and<br>FARAWAY ENTERPRISES, INC.<br><br>Plaintiffs,<br><br>v.<br><br>TESTAMERICA, INC., SAGAPONACK<br>PARTNERS, L.P., MARC WEISMAN,<br><br>Defendants. | § § § § § § § § § § § § | CAUSE NO. 3-02-CV-0106-K |

### PLAINTIFFS' OBJECTIONS TO DEFENDANTS' SECOND DRAFT OF PROPOSED JURY CHARGES

TO THE HONORABLE COURT:

Plaintiffs, BILLY J. MULLINS, JR. and FARAWAY ENTERPRISES, INC., (hereinafter collectively referred to as "Mullins") file these objections to Defendants' First Tentative Draft of Proposed Jury Charges and would respectfully show the Court as follows:

### I. ARGUMENT AND AUTHORITIES

1. **General Objections.**

    **A. No Legal Authority.**

    Defendant's have submitted no legal authority in support of the following questions 1, 2, 3, 4, and 10.

    **B. Questions Regarding Causes of Action and Relevant Defenses Should Track the Language of the Statute.**

    As proposed, questions 1, 2, 3, 4, and 5, are being submitted as defensive issues to Mullins TUFTA claims. In order to appropriately submit Plaintiffs' causes of action and the

defensive issues, the questions and instructions should track the statutory language. *Monahan v. Flannery*, 755 F.2d 678, 681 (8th Cir. 1985). Yet, the matters contained in these question are matters for evidence and argument regarding the ultimate issue of whether Defendants violated TUFTA and are not issues appropriate for a special jury issue. For example, in a negligence case related to a car wreck, the appropriate method of submitting the plaintiff's negligence cause of action to the jury is to define negligence and then ask the jury if the Defendant was negligent. During the trial, the defendant can put on defensive evidence regarding the color of the light and then in closing argument state the defendant was not negligent because the evidence demonstrates the traffic light was red. It would not be appropriate to have the jury answer a slew of questions such as (1) was the traffic light red or green, (2) was the defendant talking on a cell phone just before the accident, (3) was the defendant eating food when the accident occurred, etc. If the Court were to deconstruct Plaintiffs' cause of action and have the jury answer a question on every relevant fact in a case, the questions would potentially be endless and would create a greater chance of charge error with inconsistent jury questions.

**2. Objections to Question No. 1**

This question improperly narrows the jury's consideration of the entire transaction. Defendants propose quoting one sentence out of the Note and asking the jury if the parties agreed to it. However, in considering the obligations of the parties in a complex commercial transaction which involve many closing documents, all the documents must be considered together to determine the obligations of the parties. *See Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990); *Baylor Univ. Med. Ctr. v. Epoch Group, L.C.*, 340 F. Supp. 2d 749, 754-55 (N.D. Tex. 2004); *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135 (Tex.

PLAINTIFFS' OBJECTIONS TO DEFENDANTS'
SECOND DRAFT OF PROPOSED JURY CHARGES

2

2004). Therefore, this question is an improper attempt to excise one sentence out of one closing document and assign liabilities and obligations based on this one sentence.

Furthermore, the Note speaks for itself. This question essentially asks the jury if the contract says what it says. This is not a proper issue for the jury to answer.

Finally, unless an ambiguity is shown to exist, the interpretation of a contract is a question of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). This question asks the jury to interpret a contract although no ambiguity has been shown to exist. Because contract interpretation is a question of law, this is not a proper question for the jury.

### 3. Objections to Question No. 2.

The matters contained in this question are not an ultimate issue to be decided by the jury and is not relevant to the issues raised by the pleadings and evidence. Furthermore, because Sagaponack was an insider to TestAmerica, it cannot receive funds from any transferor in the sale of TestAmerica's assets before other creditors like Mullins. Therefore, it is irrelevant and meaningless whether TestAmerica has an outstanding debt or judgment debt to Sagaponack. Parties to a contract may not agree to violate the law. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 129 (Tex. 2004).

Additionally, as drafted this question presumes that Mullins is subordinated to Sagaponack and thus to all other debt of TestAmerica. However, this Court has implicitly, if not explicitly, rejected such a contention.

Moreover, the evidence demonstrates that the debt, if any, owed by TestAmerica to Sagaponack was paid and extinguished by the payment to Sagaponack in January 2003, as evidenced by the closing binder documents from the HIG transaction which state that Sagaponack was paid in full. Consequently, there is no question of fact to be submitted to

the jury. Additionally, whether Sagaponack had a valid judgment against TestAmerica is also a question of law. As such, it is not a fact issue that should be submitted to the jury.

**4. Objections to Question No. 3.**

This is not a proper jury question because when Sagaponack was paid in full is not an ultimate issue to be reached by the jury in determining whether Defendants breached the contract with Mullins or whether Defendants violated TUFTA. Thus, this question is not relevant to any issue, defensive or otherwise, in this case.

Additionally, because Sagaponack was an insider to TestAmerica and cannot receive funds from any transferor in the sale of TestAmerica's assets, it is irrelevant and meaningless whether TestAmerica has any outstanding debt of judgment debt to Sagaponack. Parties to a contract may not agree to violate the law. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 129 (Tex. 2004).

Furthermore, as drafted this question presumes that Mullins is subordinated to Sagaponack and thus to all other debt of TestAmerica. However, this Court has implicitly, if not explicitly, rejected such a contention.

**5. Objections to Question No. 4.**

This is not a proper jury question because whether "Fleet assigned or directed to be paid to Sagaponack money otherwise owed by TestAmerica to Fleet" is not an ultimate issue to be reached by the jury in determining whether Defendants breached the contract with Mullins or whether Defendants violated TUFTA. Thus, this question is not relevant to any issue, defensive or otherwise, in this case.

Additionally, this question assumes that Sagaponack can be paid money even though it is an insider to TestAmerica. However, section 24.005 (b)(11) of TUFTA forbids Fleet as a lienor to pay money to an insider.

Furthermore, the evidence demonstrates that Fleet agreed to take a sum of money from TestAmerica as full payment for any debts owed which constitutes an accord and satisfaction such that there was no longer any money owed to Fleet after the HIG transaction and, therefore, there was money left over to pay Mullins.

**6. Objections to Question No. 5.**

The evidence demonstrates that Fleet accepted a sum of money from TestAmerica in full payment of TestAmerica's debt to Fleet constituting an accord and satisfaction which extinguished any lien Fleet had on TestAmerica's assets. *See Hunt, Hopkins & Mitchell, Inc. v. Facility Ins. Corp.*, 78 S.W.3d 564, 568 (Tex. App.—Austin 2002, pet. denied) (nature of accord and satisfaction); *American Gen. Life Ins. Co. v. Copley*, 428 S.W.2d 862, 865 (Tex. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.) (accord and satisfaction bars any potential claims on the original obligation); *Thompson v. Pechacek*, 365 S.W.2d 207, 209 (Tex. Civ. App.—Fort Worth 1963, no writ) (accord and satisfaction extinguishes claims on original obligation). Therefore, the money derived from the sale of the assets which remained after Fleet was paid in full was not subject to any lien. Thus, the question assumes facts not in evidence and incorporates an inaccurate interpretation of the legal effect of the sale. Furthermore, the question of accord and satisfaction which extinguished the lien is a question of law which is not proper for submission to the jury.

Furthermore, this question inaccurately sets forth the law by defining "lien." The question concerns assets that Mullins argues is subject to TUFTA. As defined, the definition of assets includes a reference to a "valid lien." TUFTA § 24.002 (2)(A). The term "valid lien" is defined under TUFTA. § 24.002 (13). Therefore, it is improper to use the definition of "lien" when TUFTA provides a definition for "valid lien."

Additionally, this question is not relevant because, even assets subject to a lien can be subject to the fraudulent transfer statute. TUFTA § 24.005(b)(11). Thus, Fleet cannot assign funds from the sale of TestAmerica's assets to an insider such as Sagaponack whether the funds arose with respect to an encumbered or unencumbered asset.

**7. Objections to Question No. 6.**

The instruction is also inaccurate inasmuch as it conditions the question upon an affirmative answer to either question 4 or 5. Questions 4 and 5 are not appropriate jury questions for the reasons stated above. Therefore, any question conditioned on an affirmative finding to 4 and 5 is also not proper.

This question is an inaccurate and incomplete statement of the law. If a case is controlled by a statute, the charge should use the statutory language. *Monahan v. Flannery*, 755 F.2d 678, 681 (8th Cir. 1985). Section 24.005(a)(1) contains an entire section which describes what can be considered to determine whether a defendant transferred assets with "actual intent to hinder, delay, or defraud" the Plaintiffs. *See* TEX. BUS. & COM. CODE § 24.005(b). Therefore, the relevant elements set forth in section 24.005(b) should be included to accurately instruct the jury on what they can consider in determining whether there was actual intent to hinder, delay or defraud.

PLAINTIFFS' OBJECTIONS TO DEFENDANTS'
SECOND DRAFT OF PROPOSED JURY CHARGES

6

Defendants further requested that the jury be instructed that:

> You are instructed that if Mullins agreed to be subordinate "to the extent required by Maker [TestAmerica] . . . and subject in right of payment to the prior payment in full of all of Maker's [TestAmerica's] debt facilities whether now existing or hereinafter created," then there can be no actual intent to hinder, delay, or defraud Mullins.

Defendants cite no authority for this instruction. Defendants quote one sentence from the Note and incorporate it into an instruction of liability under TUFTA. Not only is this an inaccurate statement of the law under section 24.005 of TUFTA, but it is also inconsistent with the law which requires that all closing documents be read together to determine the obligations of the parties in a complex commercial transaction. *See In re Prudential Ins. Co.*, 148 S.W.3d 124, 135 (Tex. 2004).

Additionally, this Court has previously stated from the bench that it does not find that Mullins intended to be subordinated to every possible debt that could have been incurred by TestAmerica. Therefore, this instruction is contrary to the facts and this Court's prior statements.

The instruction is also inaccurate under section 24.005 to the extent that it suggests that assets encumbered by a lien cannot be subject to section 24.005 because section 24.005(b)(11) provides that "in determining actual intent under [section 24.005(a)(1)], consideration may be given, among other factors, to whether . . . the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." Thus, even the transfer of assets encumbered by a lien can violate TUFTA if they are transferred to an insider which is a primary contention in this case.

Moreover, the question improperly uses the definition of "lien" when the definition of "valid lien" should be used in conjunction with the definition of "asset." TUFTA § 24.002 (13).

Finally, this question suggests that the money remaining in Fleet's possession after it was paid in full came from assets encumbered by a valid lien. As a matter of law, when Fleet accepted roughly $23 million in payment of its debt and had $26 million in hand, the remaining $3 million was unencumbered by any lien.

**8. Objections to Question No. 7.**

This question does not accurately set forth the law contained in section 24.009(a). In order to accurately set forth the defensive issue contained in section 24.009, the question should track the language contained in that section. *Monahan v. Flannery*, 755 F.2d 678, 681 (8th Cir. 1985). Section 24.009 (a) states: "A transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonable equivalent value or against any subsequent transferee or obligee." The question as proposed by the Defendants does not accurately track the statutory language.

Additionally, section 24.009 requires a showing of good faith to assert the defense. As such, the burden of proving good faith is on the Defendant. By framing the question in terms of proving bad faith on the part of Sagaponack, the question is an improper attempt to shift the burden of proof to the Plaintiffs on a defensive issue for which Defendants have the burden of proof.

Furthermore, Defendant proposes to require proof of bad faith in Sagaponack's receipt of assets from Fleet. However, an insider is not a good faith transferee and "cannot reap the benefits of section 24.009 of UFTA." *Putman v. Stephenson*, 805 S.W.2d 16, 20

(Tex. App.—Dallas 1991, no writ). Because Sagaponack is an insider to TestAmerica, Sagaponack cannot assert a defense under section 24.009. Therefore, Plaintiffs are not required to prove that Sagaponack acted in bad faith when it received assets from Fleet which came from TestAmerica.

Moreover, Defendants have submitted an incorrect definition of bad faith. Because section 24.009 requires proof of good faith, the term "good faith" should be defined. An obligation of good faith is imposed on the performance of every contract or duty within the Texas Business & Commerce Code. *La Sara Grain Co. v. First Nat. Bank of Mercedes*, 673 S.W.2d 558, 563 (Tex. 1984) (citing section 1.201(19) of the Texas Business & Commerce Code). "Good faith is defined as 'honesty in fact in the conduct or transaction concerned." *Id.* at 563 (citing section 1.201(19) of the Texas Business & Commerce Code). "The test for good faith is the actual belief of the party in question, not the reasonableness of that belief." *Id.*

Additionally, while the cases cited by Defendants in support of this question may have involved a secret agreement between the transferor and the transferee, in this case, there was an agreement between two transferees, Fleet and Sagaponack, for the money to go to Sagaponack rather than to Mullins.

**9. Objections to Question No. 8.**

This question does not accurately reflect the language in section 24.006(a). For instance, section 24.006 states " . . . whose claim arose before the transfer was made or the obligation incurred . . ." However, the proposed question states that the Plaintiffs' claim must have arisen "before or within a reasonable time after the transfer was made or the obligation was incurred."

Additionally, this question defines the term "asset," the definition of which contains the term "valid lien." Defendant then defines "lien." However, under TUFTA, there is a definition for "valid lien" which is "a lien that is effective against the holder of a judgment lien subsequently obtained by legal or equitable process or proceedings." TUFTA § 24.002(13). Thus, by offering the definition of "lien," Defendants have defined the wrong term.

**10. Objections to Question No. 9.**

This question does not accurately set forth the law related to a cause of action under section 24.005(a)(2) of TUFTA. For instance, Defendants propose an instruction which says "Plaintiffs' claim must have arisen before or within a reasonable time . . ." However, the statute states that "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, *whether the creditor's claim arose before or within a reasonable time . . .*" Therefore, Defendant's proposed instruction adds another element of proof not required by section 24.005.

Additionally, this question defines the term "asset," the definition of which contains the term "valid lien." Defendant then defines "lien." However, under TUFTA, there is a definition for "valid lien" which is "a lien that is effective against the holder of a judgment lien subsequently obtained by legal or equitable process or proceedings." TUFTA § 24.002(13). Thus, by offering the definition of "lien," Defendants have defined the wrong term.

**11. Objections to Question No. 10.**

Defendants have cited no authority for this question. Furthermore, this is not an accurate instruction for a cause of action under TUFTA. If a transfer is fraudulent under

section 24.005, section 24.009(b) provides that a plaintiff may obtain a judgment against "the first transferee of the assets . . . or any subsequent transferee." TUFTA § 24.009. Because of section 24.009, Defendant's propose question is superfluous.

Furthermore, this question fails to instruct the jury that constructive receipt of assets, for instance when Weisman is entitled to receive his share of money but delays in taking the money, constitutes receipt of such assets. *See Coppedge-Link v. State Farm Life Ins. Co.*, No. 03-03-00574-CV, 2004 WL 1572913, *1-2 (Tex. App.—Austin July 15, 2004, pet. denied) ("Constructive receipt occurs when [i]ncome although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions."). Because Weisman has judicially admitted that he is the general partner of Sagaponack, Weisman was in constructive receipt of any funds received by Sagaponack. As such, Weisman cannot avoid liability by stating that he has not yet actually received any of the cash proceeds received by Sagaponack. Moreover, even if Weisman was a limited partner of Sagaponack, he would be entitled to distribution of the proceeds from the general partner.

## 12. Objections to Question No. 11

Defendants cite section 24.009 as support for this question. However, an insider is not a good faith transferee and "cannot reap the benefits of section 24.009 of UFTA." *Putman v. Stephenson*, 805 S.W.2d 16, 20 (Tex. App.—Dallas 1991, no writ).

PLAINTIFFS' OBJECTIONS TO DEFENDANTS'
SECOND DRAFT OF PROPOSED JURY CHARGES

11

Furthermore, this question instructs on the term "value," however, section 24.004(a) discusses the term "reasonably equivalent value." Defendants have also used the incorrect definition of "good faith." "Good faith is defined as 'honesty in fact in the conduct or transaction concerned." *Id.* at 563 (citing section 1.201(19) of the Texas Business & Commerce Code). "The test for good faith is the actual belief of the party in question, not the reasonableness of that belief." *Id.*

Finally, although Defendants cite section 24.009(b)(2) as support for this question, section 24.009(b)(2) has not been accurately set forth in this question.

**13. Objections to Question No. 12.**

This question is irrelevant for a number of reasons. First this question regarding actual damages is irrelevant because the parties have stipulated to the actual damages. The interest payments on the principal are able to be mathematically calculated. The documents specifically state how the principal and interest are to be calculated. The Purchase Agreement even provides that a court can enter a judgment for the appropriate amount. Therefore, a question regarding actual damages should not be submitted to the jury. Second, the question unnecessarily redefines terms that should be defined in the liability question. The damages questions should be conditioned on an appropriate answer to a liability question which incorporates the definitions of relevant terms. Incorporating the terms both in the liability questions and the damages question, will result in a second and unnecessary analysis of the applicability of these terms. The terms should be defined once; otherwise, the charge will have a greater tendency to allow an opportunity for irreconcilable jury answers. Furthermore, the question should set forth the names of the Defendants instead of leaving them blank.

Additionally, Defendants condition this question on a positive answer to Question No. 6 and a negative answer to Question No. 7. Instead of submitting Plaintiffs' cause of action under section 24.005(a)(1) and the defenses thereto in separate questions, these issues should be submitted in a single question. Otherwise, there is a greater chance of obtaining conflicting jury answers.

**14. Objections to Question No. 13.**

Defendants condition this question on a positive answer to Question No. 8 or 9 and a negative answer to Question No. 11. Instead of submitting Plaintiffs' cause of action under section 24.005(a)(2) and 24.006(a) and the defenses thereto in separate questions, these issues should be submitted in a single question. Otherwise, there is a greater chance of obtaining conflicting jury answers.

The question also unnecessarily redefines terms that should be defined in the liability question. The damages questions should be conditioned on an appropriate answer to a liability question which incorporates the definitions of relevant terms. Incorporating the terms both in the liability questions and the damages question, will result in a second and unnecessary analysis of the applicability of these terms. The terms should be defined once; otherwise, the charge will have a greater tendency to allow an opportunity for irreconcilable jury answers. Additionally, this question regarding actual damages is irrelevant because the parties have stipulated to the actual damages. The interest payments on the principal are able to be mathematically calculated. The Purchase Agreement even provides that a court can enter a judgment for the appropriate amount. The documents specifically state how the principal and interest are to be calculated. Therefore, a question regarding actual damages

should not be submitted to the jury. Furthermore, the question should set forth the names of the Defendants instead of leaving them blank.

**15. Objections to Question No. 14.**

Defendants have cited no legal authority for the instructions contained in this question concerning the imputation of knowledge to Faraway.

Defendants have not used an accurate definition for misrepresentation. In PJC 105.3B misrepresentation means: a false statement of fact or a promise of future performance made with an intent not to perform as promised." However, in their proposed definition, Defendants have added the unnecessary language "at the time the promise was made" into this definition. This is not consistent with the PJC.

Concerning the definition of misrepresentation, this question should also include the following provisions from PJC 105.3E.

> An expression of opinion that is false, made by one claiming or implying to have special knowledge of the subject matter or the opinion. 'Special knowledge' means knowledge or information superior to that possessed by the other party and to which the other party did not have equal access.

This question should also contain the following instruction from PJC 105.4:

Fraud occurs when –
a. a party conceals or fails to disclose a material fact within the knowledge of that party,
b. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discovery the truth,
c. the party intends to induce the other party to take some action by concealing or failing to disclose the fact, and
d. the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

**16. Objections to Question No. 15.**

An issue regarding the statute of limitations is a question of law which this Court has already considered and denied in Defendants' motions for summary judgment. As set forth in Plaintiffs' Brief in Support of Plaintiffs' Response to Defendants' Motions for Summary Judgment, the fraudulent transfer of assets occurred with the HIG transaction in 2003. Plaintiffs sued Defendants on December 16, 2003. Therefore, a question on limitations is not relevant.

Additionally, Defendants have changed the language as set forth in PJC 105.5 by adding "latest fraudulent act" to the instruction when PCJ 105.5 simply uses the word "fraud." Additionally, regarding the instruction immediately before the answer blanks, PCJ 105.5 merely says "answer with a date in the blank below." Defendants' instruction contains unnecessary and superfluous language particularly in light of the first instructional paragraph in this question. Furthermore, Defendants' proposed instruction immediately before the answer blanks should contain an instruction regarding "reasonable diligence."

**17. Objections to Question No. 16.**

The answer blanks in this question should contain the names of the Defendants.

**18. Objections to Question No. 17.**

Inasmuch as questions No. 1 and 2 are defective, the conditional instruction for Question No. 17 is defective.

Furthermore, Question No. 17 does not ask a question. It merely provides instructions and an answer blank.

**19. Objections to Question No. 18.**

The instruction in this question immediately prior to the answer blank is defective in that it is confusing to the jury, unclear, Defendant has cited no legal authority for it, and the issue is already subsumed under the general liability question regarding breach and therefore unnecessary.

Furthermore, this question fails to instruct the jury that it is to consider all of the closing documents together when considering whether TestAmerica breached its obligations to Mullins. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135 (Tex. 2004).

Additionally, the language in the Subordination Agreement with respect to intending to affect the rights of subordinate creditors as to other subordinated creditors is irrelevant with respect to TestAmerica's duty to comply with its obligations under the Subordination Agreement. TestAmerica is not a subordinated creditor and is, therefore, not controlled by Section 2(b) of the Subordination Agreement.

**20. Objections to Question No. 19.**

Inasmuch as Question No. 14 is defective, the conditional instruction in Question No. 19 is also defective.

As drafted, Defendants' proposed Question No. 19 is not comprehensive and fails to fully instruct the jurors on the law related to alter ego. This question fails to fully apprise the jurors of all that the jurors may consider in determining whether Sagaponack is the alter ego of TestAmerica. *See Signal Peak Enterprises of Texas v. Bettina Invs., Inc.*, 138 S.W.3d 915, 925 (Tex. App.—Dallas 2004) (factors concerning alter ego). The accurate law regarding alter ego is set forth in the instruction in Plaintiffs' proposed questions 13-15.

Defendants have cited *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986) in support of this question. In *Castleberry*, the court stated that another factor to consider in

determining alter ego is the "degree to which corporate formalities have been followed." However, Defendants have failed to include this in their proposed instruction.

Furthermore, Defendants cite Tex. Bus. Corp. Act. 2.21(a)(2) to support its instruction requiring a finding that Weisman caused Sagaponack to be used for the purpose of perpetrating fraud and did perpetrate an actual fraud on Faraway primarily for the direct personal benefit of Weisman. Section 2.21(a)(2) concerns liability of shareholders of a corporation. However, Plaintiffs have alleged that Weisman was a shareholder of Sagaponack and Sagaponack is a limited partnership, not a corporation. Therefore, the instruction regarding the requirements set forth in section 2.21(a)(2) are unnecessary and irrelevant.

**21. Objections to Question No. 20.**

There is no evidence to support the defense of waiver. Specifically, there is no evidence that Faraway waived any right that it is seeking to assert in this case.

This question inaccurately sets forth the affirmative defense contained in PJC 101.24. Pursuant to PJC 101.24, the affirmative defense of waiver should be set forth as an instruction, not a question. The instruction in PJC 101.24 states "Failure to comply by *Defendant* is excused if compliance is waived by *Plaintiff*. Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right." Submitting this defense as a question as opposed to an instruction creates an opportunity of irreconcilable jury answers. Moreover, in the PJC, the defense of waiver is contained in the discussion regarding jury issues related to contract actions. Defendants have not cited any authority for the proposition that waiver is a defense to a statutory cause of action under TUFTA.

PLAINTIFFS' OBJECTIONS TO DEFENDANTS'
SECOND DRAFT OF PROPOSED JURY CHARGES

17

Furthermore, Defendants have cited no authority to support adding the language "and/or their agent's and/or their attorney's conduct" to this instruction.

**22. Objections to Question No. 21.**

There is no evidence to support the defense of estoppel. Specifically, there is no evidence that any of the Defendants changed any of their conduct based on promises by Faraway.

Although Defendants cite PJC 101.41 as authority for this question, Defendants' proposed question does not accurately present PJC 101.41 which actually states "Did *Plaintiff*, substantially rely to his detriment on *Defendants'* promise, if any, and was this reliance foreseeable by *Defendant*. Answer:_____."

Defendants have not cited any authority for the proposition that waiver is a defense to a statutory cause of action under TUFTA.

Furthermore, Defendants have cited no authority to support adding the language "and/or their agent's and/or their attorney's conduct" to this instruction.

**23. Objections to Question No. 22**

There is no evidence to support the defense of laches. Specifically, there is no evidence that Faraway unreasonably delayed in asserting its rights or that the Defendants changed their positions because of any delay.

The elements set forth in Defendants' proposed question regarding laches are inaccurate. The essential elements of the affirmative defense of laches are: (1) unreasonable delay by one having legal or equitable rights in asserting them; (2) a good faith change or position by another to his detriment because of the delay. *In re B.A.C.*, 144 S.W.3d 8, 13

(Tex. App.—Waco 2004, no pet.). Nevertheless, Defendant's proposed question contains an undefined element regarding the existence of extraordinary circumstances.

**24. Objections to Question No. 23.**

The Defendants have not pled the defense of ratification. The defense of ratification has not been tried by consent. Because ratification is an affirmative defense, it is waived unless it has been affirmatively pled. *Land Title Co. of Dallas, Inc. v. Stigler*, 609 S.W.2d 754, 756 (Tex. 1980). Therefore, there is no pleading to support the submission of a question on the defense of ratification.

This question inaccurately sets forth the defense of ratification. "Ratification may occur when a principal, though he had no knowledge originally of the unauthorized act of his agent, retains the benefits of the transaction after acquiring full knowledge." *Land Title Co. of Dallas, Inc. v. Stigler*, 609 S.W.2d 754, 756 (Tex. 1980). Furthermore, "the critical factor in determining whether a principal has ratified an unauthorized act by his agent is the principal's knowledge of the transaction and his actions in light of such knowledge." *Id.* Therefore, the defense of ratification concerns acts between a principal and an agent, not between a plaintiff and a defendant. Because there is no pleadings or evidence that there was a principal-agent relationship between Mullins and the Defendants, this question is wholly irrelevant.

Additionally, the notes to PCJ 101.5 state that the question does not apply to situations involving ratification of fraud. Because this case involves allegations of fraud and fraudulent concealment, ratification is not an appropriate defense.

Moreover, there is no evidence to support the defense of ratification.

PLAINTIFFS' OBJECTIONS TO DEFENDANTS'
SECOND DRAFT OF PROPOSED JURY CHARGES

**25. Objections to Question No. 24.**

Inasmuch as Question No. 14 is defective, the conditional instruction in Question No. 24 is also defective.

This question inaccurately sets forth the instruction and question for punitive damages. PJC 110.33 also allows punitive damages based on a finding of fraud in addition to a finding of malice. However, the Defendants did not include the reference to fraud in their instruction as is set forth in PCJ 110.33. Furthermore, PJC 110.33 instructs that the definition of fraud should be included. Defendants did not include a definition of fraud in this question.

Respectfully submitted,

THE HUNNICUTT LAW FIRM

By: _____
J. Stephen Hunnicutt
State Bar No. 10279510

Sterling Plaza
5949 Sherry Lane, Suite 1650
Dallas, Texas 75225
(214) 361-6740
(214) 691-5099 (fax)

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing instrument was served on counsel of record via facsimile and hand delivery, on this the 14 day of February, 2005.

_____
J. Stephen Hunnicutt

PLAINTIFFS' OBJECTIONS TO DEFENDANTS'
SECOND DRAFT OF PROPOSED JURY CHARGES