

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ORIGINAL

|  |  |  |
|---|---|---|
| BILLY MULLINS, JR. and | § | |
| FARAWAY ENTERPRISES, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:02-CV-0106-K |
| | § | |
| TESTAMERICA, INC., et al. | § | |
| | § | |
| Defendants. | § | |

**COURT'S CHARGE TO THE JURY**

MEMBERS OF THE JURY:

Now that you have heard all the evidence in this case, I will now instruct you on the law that you must apply.

<u>GENERAL INSTRUCTIONS</u>

It is your duty to follow the law as I give it to you in this Charge. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Your answers and your verdict must be unanimous. You must answer all questions from a preponderance of

-1-

the evidence.  A preponderance of the evidence means such evidence as, when considered and compared with that opposed to is, has more convincing proof and produces in your mind a belief that what is sought to be proved is more likely true than not true.  In other words, to establish a claim by a "preponderance of the evidence" means to prove that the claim is more likely so than not true. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

During the course of this trial I may  instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose. You may consider such evidence only for the specific limited purposes for which it was admitted.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence you may consider in properly finding the truth as to the facts in the case. One is direct evidence.  A fact is established by direct

evidence when proved by witnesses who saw the act done or heard the words spoken or by documentary evidence. The other is indirect or circumstantial evidence -- the proof of a chain of circumstances indicating the existence or nonexistence of certain other facts. Direct proof of a state of mind is almost never available and is not required. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field, known as an expert witness, is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it. You may give it such weight as you may think it deserves. Part of that decision will depend on your judgment about whether the witness's background or training and experience is sufficient for the witness to give the opinion you heard. If you should decide the opinion of an expert witness is not based upon sufficient education, training, or experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel the opinion is outweighed by other evidence, you may disregard the opinion in part or in its entirety.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Any notes you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

Throughout these instructions, I shall refer to the Plaintiff Faraway Enterprises, Inc., as "Plaintiff." I shall refer to the Defendants TestAmerica, Inc. as "TestAmerica," Sagaponack Partners, L.P. as "Sagaponack," and Marc Weisman as "Mr. Weisman." I may refer to all the Defendants collectively as "Defendants."

Do not let bias, prejudice or sympathy play any part in your deliberations. This

case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial at your hands as a private individual. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. Do not discuss this case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case. If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the Court immediately. Hold yourself completely apart from the people involved in the case – the parties, the witnesses, the attorneys and persons associated with them. It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a party of the trial out of your presence. I will handle these matters as briefly and as conveniently for you as I can, but you should remember they are a necessary part of any trial.

## STIPULATED FACTS

The parties have agreed, or stipulated, that the following facts are not in dispute and will require no proof at trial.

1. Throughout the negotiations for the sale of Mullins Environmental Testing Co. ("METCO") to TestAmerica in 1998, Brenan Hofstadter of the Geneva Companies served as broker for Mr. Mullins.
2. Richard Hamilton acted as Mr. Mullins' attorney for the 1998 transaction with TestAmerica.
3. On or about December 18, 1998, TestAmerica and Mr. Mullins closed the 1998 transaction and executed the Asset Purchase Agreement, 8% Convertible Subordinated Note, Subordination Agreement, and Mr. Mullins' Employment Agreement and Non-Compete Agreement.
4. METCO sold substantially all of its assets to TestAmerica for a purchase price of $8.25 million paid in cash by wire and received by Mr. Mullins plus delivery of the 8% Convertible Subordinated Note, also delivered to Mr. Mullins.
5. Simultaneous with the closing of the 1998 Transaction, TestAmerica acquired two other businesses besides METCO.

-4-

6.  TestAmerica obtained financing as part of the acquisitions.
7.  TestAmerica received financing from Fleet Capital Credit Corporation ("Fleet") pursuant to the terms of the Fleet Loan and Security Agreement.
8.  TestAmerica also borrowed $7,000,000 from Key Mezzanine Capital, L.L.C. ("KMC") and Regis Capital Partners, L.P. ("Regis").
9.  The Fleet loan was first in priority as between it and the KMC and Regis loans.
10. The former METCO changed its name to Faraway Enterprises, Inc.
11. Mr. Mullins is the sole shareholder of Faraway Enterprises, Inc.
12. Mr. Mullins also became the President of TestAmerica's new subsidiary named METCO from December 18, 1998 to December 18, 2001 pursuant to his Employment Agreement.
13. TestAmerica defaulted under the Fleet Loan and KMC Credit Agreement.
14. Plaintiff filed this lawsuit on December 13, 2001.
15. Plaintiff's' Second Amended Complaint adding Sagaponack as a party again and Weisman as a party for the first time was filed, along with a Motion for Leave, on July 17, 2003. The Motion for Leave was granted and the Complaint entered by the Court on December 16, 2003.
16. The New Principal Amount of the Subordinated Note is $2,233,102.80.
17. TestAmerica sold substantially all of its assets to the HIG entities on January 3, 2003. Pursuant to the Asset Purchase Agreement, HIG purportedly paid $33,545,650 cash plus stock for the assets of TestAmerica (the "HIG transaction").
18. Fleet assigned or directed payment to Sagaponack in the amount of at least $3,202,800 from the sale proceeds of the TestAmerica assets to HIG.
19. Both Sagaponack and Faraway have always been unsecured creditors of TestAmerica.
20. Mr. Mullins received an interest payment on the Note in January, 2000 in the amount of $160,000.
21. TestAmerica has not made any other interest or principal payments.
22. Following the HIG Transaction, TestAmerica changed its name to Asheville, Inc. on or about January 3, 2003.
23. Sagaponack admits to receiving payment as a result of the HIG Transaction, but asserts it has not been paid in full. Mr. Mullins and Faraway received no payments as a result of the HIG Transaction.
24. On February 5, 2003, Sagaponack filed a lawsuit in New York against TestAmerica, Inc. The lawsuit was served on Joyce Simmons, in Asheville, North Carolina.
25. In the New York lawsuit, Sagaponack filed a Motion for Summary

-5-

Judgment.  TestAmerica did not file a Response to the Motion for Summary Judgment.  Sagaponack received a judgment in the amount of $6,400,000.

## INSTRUCTION NO. 1

I instruct you that both parties have agreed that TestAmerica and Plaintiff had an agreement for TestAmerica to pay Plaintiff certain sums of money under certain conditions.

## VERDICT QUESTIONS

In answering these questions, you are to follow all of the instructions I have given you above. You may have to return to the instructions frequently as you answer these questions.

## QUESTION NO. 1

Do you find by a preponderance of the evidence that through the Purchase Agreement, Subordination Agreement, and Note, Plaintiff agreed to be subordinate to all other of TestAmerica's creditors, whether existing at the time the Agreements and Note were signed or thereafter created?

> **Instruction:** TestAmerica has the burden of proof on this issue. If TestAmerica proved by a preponderance of the evidence that Plaintiff's right to payment was subject to the full and prior payment of all of TestAmerica's other creditors, answer "Yes;" otherwise, answer "No." In determining this question, you are instructed that you must consider the Purchase Agreement, the Note, and the Subordination Agreement together.

ANSWER:   _NO_____.

If you answered "Yes," proceed to Post-Argument Instructions. If you answered "No," proceed to Question No. 2.

BREACH

Plaintiff contends TestAmerica breached the Purchase Agreement, the Note, and the Subordination Agreement in failing to: (1) provide Plaintiff with a period income statement as required in the Purchase Agreement and/or Note; or (2) make interest and principal payments as provided for in the Purchase Agreement and/or Note. TestAmerica argues there were other conditions and terms of the Agreements and/or Note that have not yet been met, therefore no breach has occurred.

QUESTION NO. 2

Do you find by a preponderance of the evidence that TestAmerica failed to comply with the terms of the Purchase Agreement and/or Note in failing to provide Plaintiff with a period income statement?

You must find:
1. Plaintiff and TestAmerica had a valid, enforceable agreement under the Purchase Agreement and/or the Note requiring TestAmerica to provide Plaintiff with a period income statement or to fully pay for the assets purchased;
2. Plaintiff performed its contractual obligations;
3. TestAmerica breached the Purchase Agreement and/or the Note by failing to provide Plaintiff period income statement or to fully pay for the assets purchased; and
4. TestAmerica's breach caused Plaintiff damages.

**Instruction:** Plaintiff has the burden of proof on this issue. If you find TestAmerica did fail to comply with the terms of the Purchase Agreement and/or the Note, answer "Yes;" otherwise, answer "No." In determining this question, you are instructed that you must consider the Purchase Agreement and the Note together.

Answer "Yes" or "No" as to Each:

1. The Purchase Agreement:    _Yes_____

2. The Note:    _Yes_____

Proceed to Question No. 3.

-8-

QUESTION NO. 3

Do you find by a preponderance of the evidence that TestAmerica failed to comply with the terms of the Purchase Agreement, Subordination Agreement, and/or the Note in failing to make interest and principal payments?

You must find:
1. Plaintiff and TestAmerica had a valid, enforceable agreement under the Purchase Agreement, Subordination Agreement, and/or the Note requiring TestAmerica to make interest and principal payments to Plaintiff;
2. Plaintiff performed its contractual obligations;
3. TestAmerica breached the Purchase Agreement, Subordination Agreement, and/or the Note by failing to make interest and principal payments to Plaintiff due and owing under the agreement; <u>and</u>
4. TestAmerica's breach caused Plaintiff damages.

**Instruction:** Plaintiff has the burden of proof on this issue. If you find TestAmerica did fail to comply with the terms of the Purchase Agreement, Subordination Agreement, and/or the Note, answer "Yes;" otherwise, answer "No." Answer as to each. In determining this question, you are instructed that you must consider the Purchase Agreement, the Note, and the Subordination Agreement together.

Answer "Yes" or "No" as to Each:

1. The Purchase Agreement:          *Yes*

2. The Subordination Agreement:    *Yes*

3. The Note:                        *Yes*

Proceed to Question No. 4.

## UNIFORM FRAUDULENT TRANSFER ACT

Plaintiff contends Defendants fraudulently transferred property in connection with the HIG transaction in violation of the Texas Fraudulent Transfer Act ("Uniform Fraudulent Transfer Act"). Defendants deny there was any fraudulent transfer. It will be up to you to decide whether any transfers made were done so fraudulently.

### SECTION 24.005(a)(1)

Under section 24.005(a)(1) of the Uniform Fraudulent Transfer Act, a transfer is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made, if the debtor made it with actual intent to hinder, delay, or defraud any creditor of the debtor.

"Actual intent" may be determined from the following factors, although this is not an exclusive list:
1. The transfer was to an insider;
2. The debtor retained possession or control of the property transferred after the transfer;
3. The transfer was concealed;
4. Before the transfer was made, the debtor had been sued or threatened with suit;
5. The transfer was of substantially all the debtor's assets;
6. The debtor absconded;
7. The debtor removed or concealed assets;
8. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;
9. The debtor became insolvent shortly after the transfer was made or the obligation was incurred;
10. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
11. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

"Asset" means property of the debtor, but the term does not include property that is encumbered by a valid lien.

"Debt" means a liability on a claim.

-10-

"Accord and satisfaction" means the voluntary acceptance of a payment less than what is actually owed in full satisfaction of the debt.  You are instructed that both parties must agree the amount paid by the debtor to the creditor fully satisfied the entire claim.   There must be an unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation.  You are further instructed that the condition must be so clear, full, and explicit as to not be susceptible to any other interpretation.

"Debtor" means a person who is liable on a claim.

"Insider" includes:
1. If the debtor is a corporation, such as TestAmerica:
   a. a director of the debtor;
   b. an officer of the debtor;
   c. a person in control of the debtor;
   d. a partnership in which the debtor is a general partner;
   e. a general partner in a partnership described in (d);
   f. a relative of a general partner, director, officer, or person in control of the debtor;
2. An affiliate, or an insider of an affiliate as if the affiliate were the debtor; and
3. A managing agent of the debtor.

"Affiliate" is:
(1) a person who directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor;
(2) a person whose business is operated by the debtor, or who substantially all of whose assets are controlled by the debtor; or
(3) a person who operates the debtor's business, or who substantially controls all of the debtor's assets.

"Lien" means a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common-law lien, or a statutory lien.

You are instructed that when a debt is paid either in full or by accord and satisfaction, the lien is extinguished.

-11-

"Person" means an individual, partnership, or corporation.

"Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.

"Valid lien" means a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings.

## QUESTION NO. 4

In connection with the HIG transaction, do you find by preponderance of the evidence that one or more of the Defendants fraudulently transferred assets as defined in section 24.005(a)(1)?

> **Instruction:** Plaintiff has the burden of proof on this question. If Plaintiff has proven that any Defendant fraudulently transferred money during the HIG transaction as defined in section 24.005(a)(1), answer "Yes" as to that Defendant. Otherwise, answer "No."

Answer "Yes" or "No" as to Each:

1. Marc Weisman:                 _Yes_

2. TestAmerica, Inc.:            _Yes_

3. Sagaponack Partners, L.P.:    _Yes_

If you answered "Yes" as to any or all Defendants on this question, proceed to Question No. 5; otherwise, go to Question No. 7.

## SECTION 24.009(a)

Section 24.009(a) provides a defense to a transferee.  Under this section, a transfer is not voidable under section 24.005(a)(1) against a person who took in good faith and for a reasonably equivalent value.

"Reasonably equivalent value" includes, without limitation, a transfer that is within the range of values for which the transferor would have sold the assets in an arm's length transaction.

"Good faith" means honesty in fact in the conduct or transaction concerned.

In addition, the definitions provided in relation to Question No. 6 are applicable to this question as well.

An insider cannot be a good faith transferee.

## QUESTION NO. 5

Do you find by a preponderance of the evidence that Plaintiff proved that Weisman and/or Sagaponack were "insiders" as defined in Question No. 4?

**Instruction:** Plaintiff has the burden of proof on this question.  If Plaintiff proved that Weisman and/or Sagaponack was an "insider" as defined by the statute, answer "Yes" as to that Defendant; otherwise, answer "No."

Answer "Yes" or "No" as to Each:

1.  Marc Weisman:                    _Yes_

2.  Sagaponack Partners, L.P.:    _Yes_

If you answered "No" as to both Mr. Weisman and Sagaponack, proceed to Question No. 7.  If you answered "Yes" as to Mr. Weisman and/ or Sagaponack, proceed to Question No. 6. Answer Question No. 6 only as to the Defendant to which you answered "Yes" in Question No. 5.

## QUESTION NO. 6

Do you find by a preponderance of the evidence that Sagaponack and Weisman took assets from Fleet in good faith and for a reasonably equivalent value?

> **Instruction**: Sagaponack and Weisman have the burden of proof on this question. If they have proven that they took assets from Fleet in connection with the HIG transaction as defined in section 24.009(a), answer "Yes." Otherwise, answer "No."

Answer "Yes" or "No" as to Each:

1. Mr. Weisman:                    *NO*

2. Sagaponack Partners, L.P.:      *NO*

Proceed to Question No. 7.

COMMON LAW FRAUD

Plaintiff contends TestAmerica committed fraud by misrepresenting the creditors to which TestAmerica's debt would be subordinated.  TestAmerica contends there was no such fraud.

To establish their fraud claim, Plaintiff must prove by a preponderance of the evidence all of the following elements with respect to each alleged representation:
1. Defendant made a material misrepresentation;
2. The misrepresentation was made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion;
3. The misrepresentation was made with the intention that it should be acted on by Plaintiff; <u>and</u>
4. Plaintiff relied on the misrepresentation and thereby suffered injury.

"Misrepresentation" means:
1. A false statement of fact;
2. A promise of future performance made with an intent, at the time the promise was made, not to perform as promised;
3. A statement of opinion based on a false statement of fact;
4. A statement of opinion that the maker knows to be false; <u>or</u>
5. An expression of opinion that is false, made by one claiming or implying to have special knowledge of the subject matter of the opinion.

"Special knowledge" means knowledge or information superior to that possessed by the other party and to which the other party did not have equal access.

Fraud occurs when:
1. A party fails to disclose a material fact within the knowledge of that party;
2. The party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth;
3. The party intends to induce the other party to take some action by failing to disclose the fact; <u>and</u>
4. The other party suffers injury as a result of acting without knowledge of the undisclosed facts.

Mere silence does not normally amount to fraud or misrepresentation. However, a party to a transaction can be held to have made a misrepresentation if it

-15-

actively conceals or fails to disclose a material fact that it had a duty to disclose.

A duty to disclose may arise when:
1. There is a special or fiduciary relationship;
2. A person voluntarily discloses partial information but fails to disclose the whole truth;
3. A person makes a representation but fails to disclose new information that makes the earlier representation misleading or untrue; or
4. A person makes a partial disclosure and conveys a false impression.

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom.  There may be more than one proximate cause of an event.

The knowledge of Plaintiff's agent or agents is imputed to Plaintiff.  In other words, it is presumed that Plaintiff has the same knowledge as its agent or agents.  It is immaterial that the agent or agents does not actually inform Plaintiff of the particular facts under consideration.

The knowledge of Plaintiff's attorney is imputed to Plaintiff.  In other words, it is presumed that Plaintiff has the same knowledge as its attorney.  It is immaterial that the attorney does not actually inform Plaintiff of the particular facts under consideration.

QUESTION NO. 7

Do you find by a preponderance of the evidence that TestAmerica committed fraud against Plaintiff?

**Instruction:**  Plaintiff has the burden of proof on this question.  If Plaintiff has proven that TestAmerica committed common law fraud as defined, answer "Yes."  Otherwise, answer "No."

ANSWER:    _Yes_

Proceed to Question No. 8.

-16-

DEFENSE OF LACHES

Defendants contend Plaintiff's claims are barred by laches.  Laches bars a claim when the party asserting the claim unreasonably delays in asserting their rights against others who in good faith have changed their position to their detriment because of the delay.

QUESTION NO. 8

Do you find by a preponderance of the evidence that Defendants proved their laches defense?

**Instruction:** Defendants have the burden of proof on this issue.

Answer "Yes" or "No" as to each Defendant.

1.  Marc Weisman:                *NO*          .

2.  TestAmerica, Inc.:           *NO*          .

3.  Sagaponack Partners, L.P.:   *NO*          .

Proceed to Punitive Damages.

-17-

## PUNITIVE DAMAGES

Plaintiff are seeking an award of punitive damages.  If you found Defendants, or any one of them, liable for Plaintiff' injuries under Question Nos. 4 and/or 7, you may award punitive damages.  In this case, the amount, if any at all, of the actual and compensatory damages will be decided by the Court.  Therefore, you will not be asked to award a specific amount of actual or compensatory damages.

Plaintiff must prove by clear and convincing evidence that the harm for which they seek punitive damages resulted from fraud or malice.

"Clear and convincing" means the measure or degree of proof that will produce in the jurors' minds a firm belief or conviction as to the truth of the allegations sought to be established.

"Fraud" means fraud other than constructive fraud.

"Malice" means:
   A.  a specific intent by the defendant to cause substantial injury to the claimant; or
   B.  an act or omission
      1.  which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
      2.  of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

"Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes.  Exemplary damages are neither economic nor noneconomic damages.  "Exemplary damages" includes punitive damages.

If you determine that the defendants' conduct was so shocking and offensive as to justify an award of punitive damages, you may exercise your discretion to award those damages.  In making any award of punitive damages, you should consider that the purpose of punitive damages is to punish a defendant for shocking conduct, and to deter the defendant and others from engaging in similar conduct in the future. The law does not require you to award punitive damages, however, if you decide to award punitive damages, you must use sound reason in setting the amount of the

-18-

damages.  The amount of an award of punitive damages must not reflect bias, prejudice, or sympathy toward any party.  It should be presumed a plaintiff has been made whole by compensatory damages, so punitive damages should be awarded only if the defendant's misconduct, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.  You may consider the financial resources of a defendant in fixing the amount of punitive damages and you may impose punitive damages against one or more of the defendants, and not others, or against more than one defendant in different amounts.

In determining the amount of exemplary damages, you shall consider evidence, if any, relating to:

1.  the nature of the wrong;
2.  the character of the conduct involved;
3.  the degree of culpability of the wrongdoer;
4.  the situation and sensibilities of the parties concerned;
5.  the extent to which such conduct offends a public sense of justice and propriety; and
6.  the net worth of the defendant.

In any action where there are two or more defendants, an award of exemplary damages must be specific as to a defendant, and each defendant is liable only for the amount of the award made against that defendant.

You are instructed that, in order for you to find exemplary damages, your answer to the question regarding the amount of such damages must be unanimous.

**Answer Questions No. 9 only if you found Defendant(s) liable under Question No. 4.**

**Answer Questions No. 10 only if you found Defendant(s) liable under Question No. 7.**

-19-

## QUESTION NO. 9

What sum of money, if any, if paid now in cash, should be assessed against Defendants and awarded to Plaintiff as exemplary damages, if any, for the conduct found in response to Question No. 4?

**Instruction**: Plaintiff has the burden of proof on this question.

Answer in dollars and cents, if any, as to each Defendant.

1. Marc Weisman:            400,000.00

2. TestAmerica, Inc.:       500,000.00.

3. Sagaponack Partners, L.P.:   1,000,000.00.

QUESTION NO. 10

What sum of money, if any, if paid now in cash, should be assessed against TestAmerica and awarded to Plaintiff as exemplary damages, if any, for the conduct found in response to Question No. 7?

**Instruction**: Plaintiff has the burden of proof on this question.

Answer in dollars and cents, if any.

ANSWER:          _350,000.00_ .

POST-ARGUMENT INSTRUCTIONS

You are the sole and exclusive judges of the facts. You should determine these facts without any bias, prejudice, sympathy, fear, or favor, and this determination should be made from a fair consideration of all the evidence that you have seen and heard in this trial. Do not speculate on matters that are not in evidence. Keep constantly in mind that it would be a violation of your own sworn duty to base a verdict on anything but the evidence in the case. Your answers and verdict must be unanimous; that is, all of you must agree to each of your answers. You will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict, regardless of the consequences.

The fact that I have given you instructions about a particular claim or defense, or that I have not so instructed you, should not be interpreted by you in any way as an indication that I believe a particular party should, or should not, prevail in this case.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case. You will now retire to the jury room. In a few minutes I will send you this charge and the exhibits the Court has admitted into evidence. Upon receiving the exhibits and charge, you should select a foreperson and commence deliberations. Do not deliberate unless all of you are present in the jury room. In other words, if one or more of you go to lunch together or are together outside the jury room, do not discuss the case.

If during the course of your deliberations you wish to communicate with the Court, you should do so only in writing by a note signed by the foreperson. I will then respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally. I caution you, however, with respect to any message or question you might send, that you should never state or specify your numerical division at the time.

-22-

During your deliberations you will set your own work schedule, deciding for yourselves when and how frequently you wish to recess and for how long.

After you have reached your verdict, you will return this charge together with your written answers to the foregoing questions. Do not reveal your answers to anyone besides other members of the jury until such time as you are discharged, unless otherwise directed by me.

Your foreperson will sign in the space provided on the following page after you have reached your verdict.

Dated February___15th___, 2005.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

-23-

VERDICT OF THE JURY

We, the jury, have answered the above and foregoing questions as indicated, and herewith return the same into Court as our verdict.

DATED: February *16* , 2005.

_____
FOREPERSON