

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUL - 1 2005

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| FARAWAY ENTERPRISES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. 3-02-CV-0106-K |
| | § | |
| TESTAMERICA, INC., SAGAPONACK | § | |
| PARTNERS, L.P., MARC WEISMAN, | § | |
| | § | |
| Defendants. | § | |

ORIGINAL

---

## MOTION FOR LEAVE TO FILE SURREPLY TO PLAINTIFF'S
## MOTION FOR ENTRY OF JUDGMENT

---

Defendants Sagaponack Partners, L.P. ("Sagaponack") and Marc Weisman (collectively, "Defendants") file this Motion for Leave to File Surreply to Plaintiff's Motion for Entry of Judgment, and would respectfully show the Court the following:

### I.
### RELIEF REQUESTED

Defendants request leave of Court to file their Surreply to the Reply filed by the Plaintiff in support of its Motion for Entry of Judgment. A copy of Defendants' Surreply to Plaintiff's Motion for Entry of Judgment is attached as <u>Exhibit A</u> to this Motion.

### II.
### GROUNDS FOR MOTION

Plaintiff filed its Reply to the Defendants' Response to Plaintiff's Motion for Entry of Judgment on June 20, 2005. That Reply included factual and legal assertions not raised in Plaintiff's original Motion for Entry of Judgment filed on February 25, 2005. Accordingly, Defendants did not have the opportunity to address those arguments.

---

In particular, Defendants feel compelled to correct what they believe to be blatant and serious misrepresentations of the facts in the record and the applicable law. For example, Plaintiff makes the categorically false statement that "the parties agreed to have the Court assess actual and compensatory damages, the jury was neither required nor allowed to make such findings." Reply at 11, 12; *see also* Reply at 2 (asserting that Defendants did not object to the Court deciding actual and compensatory damages). That statement is not true. During the argument regarding the very instruction that Plaintiff references, counsel for Defendants' stated "[w]e do not agree that we have stipulated to the amount of actual compensatory damages. We have stipulated to the new principal amount of the note, nothing else." *See* Surreply at 1-2 (quoting Defs' Suppl. Apx. at 18-19 (Tr. at Vol. 5, 35:24-36:5)). Plaintiff cannot allow factual or legal misrepresentations of this magnitude to go uncorrected. Accordingly, Defendants seek leave to file this Surreply to correct at least some of these issues.

## III.
## CONCLUSION

WHEREFORE, Defendants Sagaponack Partners, L.P., and Marc Weisman request that this Court grant their Motion for Leave to File Surreply to Plaintiff's Motion for Entry of Judgment and that Surreply, which is attached to this Motion for Leave as <u>Exhibit A</u>, be deemed filed as of today, as well as the supplemental appendix in support of that Surreply, which is attached as <u>Exhibit B</u>.



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FARAWAY ENTERPRISES, INC., | § |
| | § |
|     Plaintiff, | § |
| | § |
| v. | § |
| | § |
| TESTAMERICA, INC., SAGAPONACK | § |
| PARTNERS, L.P., MARC WEISMAN, | § |
| | § |
|     Defendants. | § |

CAUSE NO. 3-02-CV-0106-K

---

### MOTION FOR LEAVE TO FILE SURREPLY TO PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT

---

Defendants Sagaponack Partners, L.P. ("Sagaponack") and Marc Weisman (collectively, "Defendants") file this Motion for Leave to File Surreply to Plaintiff's Motion for Entry of Judgment, and would respectfully show the Court the following:

### I.
### RELIEF REQUESTED

Defendants request leave of Court to file their Surreply to the Reply filed by the Plaintiff in support of its Motion for Entry of Judgment. A copy of Defendants' Surreply to Plaintiff's Motion for Entry of Judgment is attached as <u>Exhibit A</u> to this Motion.

### II.
### GROUNDS FOR MOTION

Plaintiff filed its Reply to the Defendants' Response to Plaintiff's Motion for Entry of Judgment on June 20, 2005. That Reply included factual and legal assertions not raised in Plaintiff's original Motion for Entry of Judgment filed on February 25, 2005. Accordingly, Defendants did not have the opportunity to address those arguments.

---

In particular, Defendants feel compelled to correct what they believe to be blatant and serious misrepresentations of the facts in the record and the applicable law.   For example, Plaintiff makes the categorically false statement that "the parties agreed to have the Court assess actual and compensatory damages, the jury was neither required nor allowed to make such findings." Reply at 11, 12; *see also* Reply at 2 (asserting that Defendants did not object to the Court deciding actual and compensatory damages).   That statement is not true.   During the argument regarding the very instruction that Plaintiff references, counsel for Defendants' stated "[w]e do not agree that we have stipulated to the amount of actual compensatory damages.  We have stipulated to the new principal amount of the note, nothing else." *See* Surreply at 1-2 (quoting Defs' Suppl. Apx. at 18-19 (Tr. at Vol. 5, 35:24-36:5)).  Plaintiff cannot allow factual or legal misrepresentations of this magnitude to go uncorrected.  Accordingly, Defendants seek leave to file this Surreply to correct at least some of these issues.

### III.
### CONCLUSION

WHEREFORE, Defendants Sagaponack Partners, L.P., and Marc Weisman request that this Court grant their Motion for Leave to File Surreply to Plaintiff's Motion for Entry of Judgment and that Surreply, which is attached to this Motion for Leave as <u>Exhibit A</u>, be deemed filed as of today, as well as the supplemental appendix in support of that Surreply, which is attached as <u>Exhibit B</u>.

Respectfully submitted,

Michael P. Lynn, P.C.
Texas Bar No. 12738500
Edward Jason Dennis
Texas Bar No. 24045776
LYNN TILLOTSON & PINKER, LLP
750 North St. Paul Street, Suite 1400
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR DEFENDANTS
SAGAPONACK PARTNERS, L.P. and MARC
WEISMAN**


## CERTIFICATE OF CONFERENCE

Counsel for Defendants personally conducted a conference with Steve Hunnicutt on June 20, 2005 regarding this Motion.  Plaintiff opposes this motion.

Certified to this 1st day of July, 2005

Edward Jason Dennis

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served as shown below on counsel of record on July 1, 2005.

**VIA FACSIMILE**
J. Stephen Hunnicutt
THE HUNNICUTT LAW FIRM
5949 Sherry Lane, Suite 1650
Dallas, Texas 75225
(214) 361-6740 Telephone
(214) 691-5099 Facsimile

Edward Jason Dennis

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **FARAWAY ENTERPRISES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. 3-02-CV-0106-K** |
| | § | |
| **TESTAMERICA, INC., SAGAPONACK** | § | |
| **PARTNERS, L.P., MARC WEISMAN,** | § | |
| | § | |
| **Defendants.** | § | |

---

## DEFENDANTS' SURREPLY TO PLAINTIFF'S
## MOTION FOR ENTRY OF JUDGMENT

---

Defendants Sagaponack Partners, L.P. ("Sagaponack") and Marc Weisman (collectively "Defendants") file this Surreply to Plaintiff's Motion for Entry of Judgment, and would respectfully show the Court the following:

1. **Plaintiff Misrepresents to This Court that Defendants Agreed to Actual and Compensatory Damages Being Decided by the Court.**

   Plaintiff bases much of the argument in its Reply on the patently false claim that "the parties agreed to have the Court assess actual and compensatory damages, the jury was neither required nor allowed to make such findings." Reply at 11, 12; *see also* Reply at 2 (asserting that Defendants did not object to the Court deciding actual and compensatory damages). Those statements are absolutely and demonstrably false:

   > [MR. DENNIS] We would object to in the first paragraph, second and
   > third sentences, the parties have stipulated to the amount,
   > if any at all, of the actual compensatory damages therefore
   > you will not be asked to award a specific amount of actual
   > or compensatory damages.

---

**EXHIBIT**

**A**

> We do not agree that we have stipulated to the amount
> of actual compensatory damages. We have stipulated to the
> new principal amount of the note, nothing else.

Defs' Suppl. Apx. at 18-19 (Tr. at Vol. 5, 35:24-5) (emphasis added).

Moreover, Plaintiff's suggestion that Defendants needed to object to Plaintiff's failure to obtain necessary findings on damage questions is also again wrong. The burden is on the Plaintiff not the Defendants to propose a damage issue:

> [Plaintiff] alternatively argues that even if there were no actual tort damages found by the jury, [Defendant] waived its right to complain of this feature of the judgment by not objecting to the jury charge in accordance with Fed. R. Civ. Proc. 51. This argument seeks to shift the burden of securing a finding of actual damages from the plaintiff to the defendant. The defendant has no duty to ensure that the plaintiff has furnished jury questions covering all fact issues necessary to his cause of action.

*Hadley v. VAM P.T.S.*, 44 F.3d 372 (5th Cir. 1995) (emphasis added).

Plaintiff also seeks to rely on a stipulation by Sagaponack that "Fleet assigned or directed payment to Sagaponack in the amount of at least $3,202,800 from the sale proceeds of the TestAmerica assets to HIG."[1] Defs' Apx at 36. Critically, Sagaponack did not stipulate that it received any transfer from TestAmerica, Inc. ("TA"), Sagaponack only stipulated that Fleet assigned or transferred money to Sagaponack in connection with the HIG Transaction. Plaintiff must demonstrate a transfer by the debtor, TA. Plaintiff cannot pick and choose which part of a stipulation they wish to rely upon. Indeed, by its stipulation that Fleet assigned or directed the money to Sagaponack, Plaintiff cannot now breach their stipulation and say that Sagaponack received any money from TA. Accordingly, the cited stipulation and amount cannot be

---

[1] It is also of note that while Plaintiff tries to latch onto this stipulation that clearly addresses only a transfer between Sagaponack and Fleet, in the same breath Plaintiff tries to argue that TA and Sagaponack are joint tortfeasors with "TestAmerica as transferor and Sagaponack as transferee." Reply at 4. Those positions are entirely inconsistent.

substituted for what Plaintiff was required to prove at trial: the amount it was <u>damaged</u> by a transfer from TA to Sagaponack. *See* TEX. BUS. & COMM. CODE § 24.005(a)(1).

**2.  Plaintiff Cannot Rely on Evidence That Was Not Admitted At Trial.**

Plaintiff had an opportunity to present its case at trial; it cannot now rely upon documents and testimony that are not in evidence to support its judgment.  In spite of this basic principle, Plaintiff submits to this Court and seeks to rely upon  (1) a deposition of Mr. Weisman that was not offered or admitted into evidence, Reply at 3, 5, 6, 13; (2) a verified complaint from another lawsuit not offered or admitted into evidence, Reply at 3, 5, 10, 24, 25; (3) payoff letters that were not offered or admitted into evidence; Reply at 15, 23, 24 and (4) a withdrawal notice to Bank One that was not offered or admitted into evidence, Reply at 15.  All of those documents are outside of the record and cannot be used to support any judgment, and Defendants hereby move to strike them from the record of this Motion.  Accordingly, Exhibits 2, 3, 5 (with the exception of App. pp. 50-57), and 6 of the Appendix to Plaintiff's Reply may not be considered by this Court in entering a judgment in this action and should be stricken from the record.  Those documents are not in evidence and are irrelevant to any issue related to Plaintiff's Motion for Entry of Judgment.

**3.  Plaintiff Did Not Plead Any Claim That Mr. Weisman Was the General Partner of Sagaponack.**

Plaintiff's blithe citation to page six of its Second Amended Complaint as evidence that it pled and provided notice to Mr. Weisman that it sought to hold him liable as the general partner of Sagaponack – though he is not – is seriously misleading and is once again an attempt to sneak questions past the Court.  *See* Reply at 8.  To the contrary, Plaintiff never pled or alleged any theory of liability against Mr. Weisman as the general partner of Sagoponack until the pre-trial submission of its proposed jury instructions.  In response to that new claim (and others) snuck

into Plaintiff's proposed jury instructions, Defendants filed their "Objections to the Unpled Claims Asserted in Plaintiffs' Proposed Jury Instructions." Defs' Apx at 17. Plaintiff responded by filing a motion seeking a trial amendment.[2] *Id.* at 26. The Court sustained Defendants' objections at the Pre-Trial Conference on February 4, 2005, refusing to allow the addition of any further claims or theories of relief by Plaintiff. More importantly, however, Plaintiff did not object to the absence of any instructions or questions on this issue either.[3] Defs' Suppl. Apx. at 7 (Tr. at Vol. 5, 11-21).

In addition to the Court having previously resolved this issue, there is no basis for Plaintiff's claim that (1) he ever pled this theory of relief in his complaint and (2) that it matters anymore. First, what Plaintiff relies upon as notice on page six of its Second Amended Complaint is seriously misleading. Under the category of "The Parties," Plaintiff lists where Sagaponack and Mr. Weisman may be served with process and describes Mr. Weisman by stating that he "is an individual, is the Managing Partner of Sagaponack, the Acting President of Asheville, and was on the Board of Directors of TestAmerica." Pltf's Second Amended Complaint, ¶1.13. Nowhere does the Complaint reference that Plaintiff sought to hold Mr. Weisman derivatively liable as the <u>general partner</u> of Sagaponack. Quite obviously, the "managing partner" moniker in the context of stating where potential parties may be served tracked the language of FED. R. CIV. P. 4(h)(1), which permits service of process on a "managing or general agent" of a partnership. Nevertheless, even presuming that Plaintiff did not mean to reference the service rule in describing where parties may be served, there is no basis whatsoever

---

[2] Note that the Motion for Trial Amendment was procedurally improper in any event because trial had not yet begun. *See* FED. R. CIV. P. 15(b).

[3] Note that Plaintiff did make a single objection to a question during the testimony of Mr. Weisman that related to this theory. Def's Suppl. Apx. at 3 (Tr. at Vol. 4, 128-29).

to conclude that Mr. Weisman would have been put on notice of Plaintiff's theory by that – at best – ambiguous reference.

Finally, even if properly pled (and it was not), Plaintiff did not seek any findings on this issue at trial.  Plaintiff now argues that Mr. Weisman's actions demonstrates that he is a general partner of Sagaponack.  Reply at 10.  But Plaintiff is arguing these factual issues too late and to the wrong audience.  This Court cannot make a factual finding after trial – on evidence not even offered at trial – that Mr. Weisman's alleged actions as a limited partner converted him into a general partner.[4]

## 4. Plaintiff Continues to Invite Error by this Court With Regard to the Treatment of Insiders Under TUFTA.

Plaintiff continues to perpetuate the myth that "insiders" as a class may never have superior rights to any other creditor.  First, Plaintiff did not bring a "preference" action against Defendants under § 24.006(a)(2).  Plaintiff brought an action under § 24.005(a)(1) for intent to hinder, delay or defraud.  Nevertheless, in both "preference" actions and "intent to hinder, delay or defraud" actions, TUFTA permits a number of exceptions to the voidability of transfers to insiders and permits liens by insiders against the asset for value given.  *See* TEX. BUS. & COMM. CODE § 24.009(d), (f)(1)-(3).  Plaintiff, however, continues to make erroneous statements such as [u]nder TUFTA, insiders such as Sagaponack cannot take before the Plaintiff. § 24.005(b)(1)(11).  Reply at 14.  TUFTA, however, does not say that.  Instead, Plaintiff argued to this Court that based upon *Putnam v. Stephenson*, 805 S.W.2d 16, 20 (Tex. App. — Dallas

---

[4] This new argument is no doubt motivated by the fatal arguments to Plaintiff's "judicial admission" theory, as discussed in Defendant Sagaponack and Weisman's Response at 11-13.  In particular, Plaintiff fails to even address how a summary judgment brief is a "pleading" under the federal rules or an intentional waiver where the correct information was provided later in the brief and in the affidavit cited to the very sentence on which Plaintiff seeks to rely.  Plaintiff manufactures a fictional quote on the bottom of page 8 of his Reply that impugns Mr. Weisman as not being honest with the Court.  It is Plaintiff, we suggest, who has not being forthright with this contrived and baseless argument.

---

1991, no writ), that insiders cannot be good faith transferees as a matter of law. As a recent case highlights, however, Plaintiff's argument cannot be the law in Texas.

For fraudulent conveyance actions in Texas, "good faith" has a particular definition, as discussed by the Dallas Court of Appeals in a decision rendered in March of this year: "In the context of fraudulent conveyances, 'good faith' means that a transaction was made without a secret agreement."[5] *Yokogawa Corp. of America v. Skye Intern. Holdings, Inc.*, 159 S.W.3d 266 (Tex. App. – Dallas 2005, no writ) (citing *Hawes v. Central Tex. Prod. Credit Ass'n*, 503 S.W.2d 234, 236 (Tex. 1973); *Tigrett v. Pointer*, 580 S.W.2d 375, 396 (Tex. Civ. App. – Dallas 1978, writ ref'd n.r.e.)).[6] If "good faith" in Texas is defined as the absence of a secret agreement with the debtor, then it cannot be the case that an "insider," such as Sagaponack, that is not proven to have any secret agreement or have received more money than it was owed may be found to lack good faith.

### 5. Plaintiff's Assertion That TUFTA Provides That Transferees Are Liable For the Entire Alleged Claim of a Creditor Is Wrong.

A transferee cannot be liable for anymore than the amount of the transfer. TEX. BUS. & COMM. CODE § 24.009(b). Plaintiff makes such statements in his Reply that "Sagaponack is liable for the amount of the assets fraudulently transferred from TestAmerica to the same extent TestAmerica, as transferor, is liable for the amounts fraudulently transferred." Reply at 5. Those statements are a false representation of the law. The liability of a transferee is not co-extensive with the alleged debtor. It is telling that nowhere within the Reply does Plaintiff cite to

---

[5] "[MR. DENNIS] we have previously submitted to the court that under Texas Court Supreme precedent Hawes that Texas courts have defined "good faith" in the context of fraudulent conveyance to mean that the transferee does not receive assets in excess of their debt and that there's no secret agreement to benefit the debtor. So we would object on those basis. / THE COURT: Overruled." Defs' Suppl. Apx at 20 (Tr. at Vol. 5, 32:7-14). *See, e.g.,* Defs' Trial Brief at 23-24; Defs' First Draft of Jury Charges at 10; Defs' Second Draft of Jury Charges at 9; Response to Pltfs' Mtn. for Summary Judgment at 17.

[6] *See also Bossier Bank & Trust Co. v. Phelan*, 615 S.W.2d 872, 874 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) (same).

---

or mention § 24.009(b) of TUFTA, because that statute unambiguously provides that "the creditor may recover judgment for the <u>value of the asset transferred,</u> as adjusted under Subsection (c) of this section, <u>or</u> the amount necessary to satisfy the <u>creditor's claim, whichever is less</u>." TEX. BUS. & COMM. CODE § 24.009(b). Accordingly, even if Plaintiff had proven damages from a transfer by TA to Sagaponack, the amount received by Sagaponack is the most that Plaintiff could ever recover. Alleged transferees are not liable to the extent of the claimant's alleged debt.

### 6. Plaintiff Leaves the Court in a "Catch 22" With Its Argument That the Court Could Find an Ambiguity On Its Own Motion.

Plaintiff creates a "Catch 22" for the Court with its assertion that the "Court is not bound by the parties arguments that the agreement were unambiguous." Reply at 21. If the Court were to find an "ambiguity" though not pled by either party, then it was clear error not to permit the introduction of parol evidence to resolve that ambiguity. On the other hand, it would be error for the Court to enter judgment on the jury's construction of unambiguous contracts, which is a matter of law. The answer is for the Court to construe the contracts as a matter of law. And that chore is not difficult.

There are three agreements at issue. The subordination clauses in the Subordinated Note and Purchase Agreement unambiguously provide that Plaintiff's Note is subordinate to all other debt facilities of TA. The Subordination Agreement unambiguously provides that nothing contained in the Agreement "is intended to or shall affect the relative rights of the holders of Subordinated Debt" and that the subordinated debt shall be paid "in accordance with their terms." Defs' Apx at 182 (Subordination Agreement, § 8. Had that language been used in any other context, it would be as clear as here. If parties had two cases pending before this Court, and they settled one, providing in the settlement agreement that nothing contained herein shall

effective the relative rights of the parties in the other lawsuit. All would understand the phrase's meaning. This case calls out for clear unadorned reading of the words "not intended to affect the relative rights." Upon such a reading, it is clear and unambiguous that Defendant Sagaponack had a right under the Note, to payment ahead of Plaintiff.

**7.  Plaintiff's Damage Calcualtions Are Undecipherable and It is Unknown Any Longer What Judgment Plaintiff is Actually Seeking From the Court.**

Plaintiff includes two unexplained spreadsheets in its Appendix that purport to calculate damages. Defendants will not address all of the problems with these calculations but note, first, Plaintiff still seeks to impose default interest without a finding of when default occurred. Second, Plaintiff cannot recover any "default interest" on a TUFTA claim against a transferee that is not a party to the contract. All that is recoverable is the amount transferred.[7] Third, plainly "pre-judgment interest" cannot accrue on top of an interest bearing instrument. Fourth, the spreadsheets double-count interest payments. Finally, Plaintiff continues to include unauthorized compound interest, or interest on interest.

## CONCLUSION

Defendants no longer know what judgment Plaintiff is now seeking, and do not see how the Court can know either. Plaintiff admits that it "mistakenly sought damages," Reply at 2,[8] yet Plaintiff still asks for entry of its previously submitted Proposed Judgment. Accordingly, Defendants request a hearing before the Court so that Plaintiff can clarify what it is seeking and the parties can address the various complex issues raised by Plaintiff's Proposed Judgment.

---

[7] *See, supra,* at Section 5.

[8] Plaintiff also implicitly concedes that he concocted the amount of damages for failure to provide a period income statement: "This amount constitutes partial expenses incurred by the Plaintiff for the arbitration." Reply at 25. No segregation of these "partial" costs is provided in Plaintiff's Reply – or more importantly in the record at trial – much less any evidence of causation.

Ultimately, Defendants believe that the Court will recognize that no judgment should be entered at all.

Respectfully submitted,

Michael P. Lynn, P.C.
Texas Bar No. 12738500
Edward Jason Dennis
Texas Bar No. 24045776
LYNN TILLOTSON & PINKER, LLP
750 North St. Paul Street, Suite 1400
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR DEFENDANTS
SAGAPONACK PARTNERS, L.P. and MARC
WEISMAN**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served as shown below on counsel of record on July 1, 2005.

VIA FACSIMILE
J. Stephen Hunnicutt
THE HUNNICUTT LAW FIRM
5949 Sherry Lane, Suite 1650
Dallas, Texas 75225
(214) 361-6740 Telephone
(214) 691-5099 Facsimile

Edward Jason Dennis

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **FARAWAY ENTERPRISES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. 3-02-CV-0106-K** |
| | § | |
| **TESTAMERICA, INC., SAGAPONACK** | § | |
| **PARTNERS, L.P., MARC WEISMAN,** | § | |
| | § | |
| **Defendants.** | § | |

---

## SUPPLEMENTAL APPENDIX TO
## DEFENDANTS' SURREPLY TO PLAINTIFF'S
## MOTION FOR ENTRY OF JUDGMENT

---

1.  Trial Transcript, Vol. 4 ................................................................................................1
2.  Trial Transcript, Vol. 5 ................................................................................................5

Respectfully submitted,

Michael P. Lynn, P.C.
State Bar No. 12738500
Britta Erin Liukonen
State Bar No. 24036976
Edward Jason Dennis
State Bar No. 24045776
**LYNN TILLOTSON & PINKER, LLP**
750 North St. Paul Street, Suite 1400
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

**ATTORNEYS FOR DEFENDANTS
MARC WEISMAN, SAGAPONACK
PARTNERS, L.P., and TESTAMERICA, INC.**

**EXHIBIT**

**B**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served as shown below on counsel of record on July 1, 2005.

*Via Hand Delivery*
J. Stephen Hunnicutt
THE HUNNICUTT LAW FIRM
5949 Sherry Lane, Suite 1650
Dallas, Texas 75225
(214) 361-6740 Telephone
(214) 691-5099 Facsimile

Edward Jason Dennis

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BILLY J. MULLINS, JR.,          (     CIVIL ACTION NUMBER
                                (
VERSUS                          (     3:02-CV-0106-K
                                (
TESTAMERICA, INC.,              (     FEBRUARY 14, 2005


VOLUME 4
TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE ED KINKEADE,
UNITED STATES DISTRICT JUDGE, and a jury


For the Plaintiffs:

                    J. STEPHEN HUNNICUTT
                    PAT GUILLOT
                    KIRK PITTARD
                    CLIFFORD WAYNE THOMAS
                    Hunnicutt Law Firm
                    Sterling Plaza
                    5949 Sherry Lane, Suite 1600
                    Dallas, Texas  75252
                        214-361-6740


For the Defendant:

                    MICHAEL P. LYNN
                    BRITTA E. LIUKONEN
                    EDWARD JASON DENNIS
                    Lynn Tillotson & Pinker
                    750 N. St. Paul Street, Suite 1400
                    Dallas, Texas  75201
                        214-981-3800

Court Reporter:

                    RANDY M. WILSON, CSR
                    1100 Commerce, Room 1625

                    Dallas, Texas  75242

                        214-766-9150

Defs' Suppl Apx 1

Page 199

C E R T I F I C A T I O N

I, RANDY M. WILSON, CSR, certify that the foregoing is a transcript from the record of the proceedings in the foregoing entitled matter.

I further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the United States.

This the ___3rd___ day of ___May___, 2005.


RANDY M. WILSON, CSR

Official Court Reporter

The Northern District of Texas

Dallas Division

Defs' Suppl Apx 2

1   acting president of TestAmerica.  They changed their name to

2   Asheville Inc.  And I've been liquidating it.

3   Q.   Do you -- with respect to Sagaponack, do you have -- do

4   you own Sagaponack's property or do you use Sagaponack's

5   property?

6   A.   No.  Sagaponack Partners is a separate entity.  It has

7   over 30 limited partners.  They vary.  The majority of the

8   interests in Sagaponack Partners are owned by retirement

9   funds for Quest, which is a pension -- which is the old U.S.

10  West Telephone Company, and some charitable foundations.

11  They're other investors in there.  My share is about 2

12  percent.

13       Sagaponack is -- maintains its own separate existence,

14  its own and books and records, has audited financial

15  statements done every year, has some bank accounts.

16       And I -- from an ownership perspective I have a very

17  small part to play in Sagaponack.

18  Q.   Who is the managing partner?

19  A.   Well --

20       MR. GUILLOT:  Your Honor, we'll object to that.

21  They've already admitted judicially that he's the general

22  managing partner.

23       MR. LYNN:  Your Honor, that's -- that is not the

24  case.  He's trying to say that there was a summary judgment

25  where an error was made with respect to the document.  It

1   has nothing to do with the --

2         THE COURT:  I'll let you go into that with cross.

3   And if --

4         MR. GUILLOT:  We just don't want to waive to that

5   statement that he has judicially admitted it.  I don't want

6   to be standing up every time.

7         THE COURT:  Okay.  I understand your position and

8   I'm going to overrule your objection at this time.

9   BY MR. LYNN:

10  Q.   Who's the general partner?

11  A.   The general partner is company called RSP Capital.  And

12  it, itself, is an entity that's in the form of a limited

13  liability company.

14  Q.   And who is the -- who manages that company?

15  A.   Okay.  The control and management of that company is in

16  its managing member who is Barry Rosenstein.

17  Q.   And if for any reason our law firm made a mistake in a

18  brief, that's not your mistake?

19  A.   I would hope not.

20  Q.   Now, with respect to the -- there's been a great deal

21  of talk here about the fact that you have been accused of

22  fraud by this gentleman over here, Mr. Mullins?

23  A.   Uh-huh.

24  Q.   And he says that you somehow cheated him, lied to him,

25  or something.  Did you have any discussions with Mr. Mullins

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


| | | |
|---|---|---|
| BILLY J. MULLINS, JR., | ( | CIVIL ACTION NUMBER |
| | ( | |
| VERSUS | ( | 3:02-CV-0106-K |
| | ( | |
| TESTAMERICA, INC., | ( | FEBRUARY 15, 2005 |


VOLUME 5
TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE ED KINKEADE,
UNITED STATES DISTRICT JUDGE, and a jury


For the Plaintiffs:

J. STEPHEN HUNNICUTT
PAT GUILLOT
KIRK PITTARD
CLIFFORD WAYNE THOMAS
Hunnicutt Law Firm
Sterling Plaza
5949 Sherry Lane, Suite 1600
Dallas, Texas  75252
214-361-6740


For the Defendant:

MICHAEL P. LYNN
BRITTA E. LIUKONEN
EDWARD JASON DENNIS
Lynn Tillotson & Pinker
750 N. St. Paul Street, Suite 1400
Dallas, Texas  75201
214-981-3800

Court Reporter:

RANDY M. WILSON, CSR
1100 Commerce, Room 1625

Dallas, Texas  75242

214-766-9150

Defs' Suppl Apx 5

1
2
3                     C E R T I F I C A T I O N
4
5
6         I, RANDY M. WILSON, CSR, certify that the foregoing is a
7    transcript from the record of the proceedings in the
8    foregoing entitled matter.
9
10        I further certify that the transcript fees format comply
11   with those prescribed by the Court and the Judicial
12   Conference of the United States.
13
14        This the _3rd_ day of _May_, 2005.
15
16
17
18
                              RANDY M. WILSON, CSR
19                            Official Court Reporter
                              The Northern District of Texas
20                                  Dallas Division
21
22
23
24
25                                        Defs' Suppl Apx 6

00188a60-bbc5-11d9-9d0a-d2c50b54fb31

1      MS. LIUKONEN:  Your Honor, would you like

2 Mr. Pittard to go through all of the objections first?

3      THE COURT:  Absolutely.

4    And you're going to make all of them?

5      MS. LIUKONEN:  Mr. Pittard is going to make some

6 and I will make some.

7      THE COURT:  Okay.  You're dividing up your

8 objections to the charge, that's good.

9      MS. LIUKONEN:  Thank you, judge.

10      MR. PITTARD:  Your Honor, plaintiff's first

11 objection is to stipulation number 25.  We requested that

12 the words "in the New York lawsuit" be added to the

13 beginning of that stipulation.  It's not --

14      THE COURT:  Oh, I did agree to add that.  I meant

15 to do that.  So I will add that.

16    Where?  Number 25?

17      MR. PITTARD:  Number 25, Your Honor.

18      THE COURT:  Where was I supposed to add that?

19      MR. PITTARD:  At the very beginning, In New York,

20 Sagaponack filed a motion.

21      THE COURT:  Okay.  I will add that.

22    Off the record.

23           (Discussion off the record.)

24      THE COURT:  Okay.

25      MR. PITTARD:  In regards to question number 1,

00188a60-bbc5-11d9-9d0a-d2c50b54fb31

1   plaintiffs object to the instruction that says if you

2   answered yes proceed to post judgment --

3            THE COURT:  What page are you on?

4            MR. PITTARD:  Page 7, Your Honor.

5            THE COURT:  All right.  And which instruction?

6            MR. PITTARD:  The final instruction after the

7   answer blank.

8            THE COURT:  TestAmerica has the burden of proof on

9   this issue?

10           MR. PITTARD:  No.  Just below the answer blank, it

11  says if you answered yes proceed to post judgment -- I mean

12  post argument instructions.

13       Plaintiff objects to this instruction as it informs the

14  jury of the legal effect of their answers.

15           THE COURT:  All right.  I overrule your objection.

16       Go ahead and state whatever else you want to state for

17  the record.

18           MR. PITTARD:  With regard to that, we would like

19  that instruction be removed so that all the questions can be

20  answered for purposes of asserting judgments -- motions for

21  judgment as a matter of law after the verdict is returned.

22       On page 8 in regard to question number 2, plaintiffs

23  object in the first paragraph when it discusses --

24           THE COURT:  So your position is if they didn't go

25  ahead and answer everything I wouldn't have to try the case

1  again?

2       MR. PITTARD:  Well, yeah, if they went ahead and

3  answered everything then if there was a judgment as a matter

4  of law afterwards we could -- the court could make its

5  determinations based on the evidence which -- which

6  questions to uphold and which to overrule and entering a

7  judgment as a matter of law.

8       If we don't get answers to all those questions we have

9  this one answer and then we're essentially moving for new

10  trial and have the whole trial over again, if the court was

11  inclined to grant a new trial.

12       THE COURT:  Okay.  You want to argue about that

13  again?   Y'all already argued that --

14       MS. LIUKONEN:  It would cause inconsistency, Your

15  Honor, and that could potentially be very easy to cause

16  problems.

17       Additionally, predicate questions like these or

18  instructions saying only if you found these answers X or Y

19  proceed to the following questions are extremely common and

20  they don't inform the jury of the effect of their verdict.

21       MR. PITTARD:  Your Honor, I wouldn't even have a

22  problem if that question was moved to the end such that we

23  could get answers to all the questions and then they answer

24  that question, but I just have a problem with it being at

25  the very beginning such that the jury ignores the rest of

VOL 5

Page 14

1    it.

2           THE COURT:   Okay.   I'm going to think about that.

3    I may take that out.   I do want to get answers to these

4    other questions though.

5           I will tell you I think the effect of answering that

6    question yes, if they answer it one way it is over.   That's

7    what I think.   But if I'm wrong, later on it might keep me

8    from having to try this case again if I had answers to these

9    other questions.   That's my thought about that.

10          I know that the defendants object to that because you

11   think it might cause inconsistencies; am I stating that

12   right or wrong?

13          MS. LIUKONEN:   That's -- that's correct.

14   Additionally, each of the other questions would then have to

15   be predicated on each of those.   And we believe the

16   predicate should be before each of the other liability

17   questions.

18          So if, like Your Honor said, if the jury finds yes to

19   this first question then none of those other questions

20   should be asked, and so therefore it's improper to submit to

21   the jury.

22          THE COURT:   Okay.   I'm going to leave it in there.

23   Overrule your objection.

24          MR. PITTARD:   Your Honor, on question number 2 on

25   page 8 under the first paragraph under breach there are two

1    items referenced.  The first one is provide plaintiff with

2    period income statements as required in the purchase

3    agreement.

4                THE COURT:  Where are you?

5                MR. PITTARD:  In the first paragraph on page 8

6    under breach.

7                THE COURT:  All right.

8                MR. PITTARD:  There's a number 1 in parens and a

9    number 2 in parens.

10               THE COURT:  Yes, sir.

11               MR. PITTARD:  We would ask that those be connected

12   disjunctively and that and right before the paren -- the

13   number 2 in parens be changed to and/or.  It's in there as

14   an and so we would object to that being submitted

15   conjunctively as opposed to disjunctively.

16               THE COURT:  What did I put, and/or?

17               MR. PITTARD:  Right now it says and.

18               THE COURT:  No, it's and/or.  See and/or note,

19   that's the third part of it.  And then just principal and

20   interest payments.

21               MR. PITTARD:  I see.  I think we had requested

22   that the --

23               THE COURT:  You want it to be or instead of

24   and/or?

25               MR. PITTARD:  Well, I -- just before number 2 in

00188a60-bbc5-11d9-9d0a-d2c50b54fb31

1   parenthesis it says and.

2           THE COURT:  I see that.  And that's talking about

3   interest and principal payments.

4           MR. PITTARD:  Right.  Because in order to breach

5   -- let's see.

6       Okay, Your Honor, I see.

7           THE COURT:  I'm thinking that it was supposed to

8   be "and" there.

9       Oh, you want it to be "or"?

10          MR. PITTARD:  We want it to be "or" before the 2

11  just because they can --

12          THE COURT:  All right.  I see what you're saying.

13          MR. PITTARD:  Okay.

14          THE COURT:  I think you're right about that.

15      Okay.  Y'all object to that?

16          MS. LIUKONEN:  We do object to the "or".

17          THE COURT:  All right.  Okay.  Overrule your

18  objection.  I'm going to add that.

19      Okay.  What else?

20          MR. PITTARD:  In -- in number 1 there in that same

21  paragraph just before period income statements we had

22  requested that the words "a timely" be added in there --

23          THE COURT:  No, overruled.

24          MR. PITTARD:  Okay.  That same objection -- yeah,

25  that same objection is also in regards to under that same

00188a60-bbc5-11d9-9d0a-d2c50b54fb31

1   question it says you must find and then 1 and then 3 you

2   must find it talks about provided -- providing plaintiff a

3   period income statement, we also requested the words

4   "timely" in both of those.  And we object to that not being

5   added.

6           THE COURT:  Overruled.

7           MR. PITTARD:  On page 10 under the Uniform

8   Fraudulent Transfer Act in the first sentence on that page,

9   plaintiff contends defendants fraudulently transferred, we

10  object to the words "or received" not being inserted after

11  transfer because someone can be liable under the Fraudulent

12  Transfer Act but --

13          THE COURT:  Page 10?

14          MR. GUILLOT:  Page 11.

15          MR. PITTARD:  Oh, I'm sorry, Your Honor, page 11.

16  I have an old draft here.

17          THE COURT:  Okay.  Get on the new draft.

18          MR. PITTARD:  Page 11, Your Honor, in the first

19  paragraph under Uniform Fraudulent Transfer Act, plaintiff

20  contends defendants fraudulently transferred, after the word

21  "transferred" we requested the words "or received" be added

22  in there, because someone can be liable not only for

23  transferring property but also for having received it.

24          THE COURT:  Okay.  Overruled.

25          MR. PITTARD:  On that same page under actual

Page 18

1  intent, the things that are listed out, 1 through 11, we

2  object to certain ones having being added back in.

3          THE COURT:  Which ones?

4          MR. PITTARD:  Pardon me?

5          THE COURT:  Which ones?

6          MR. PITTARD:  2, 6, 7, 8.  And that's it, 2, 6, 7,

7  8.

8          THE COURT:  Because?

9          MR. PITTARD:  Because they're irrelevant to this

10 proceeding.  There's -- we haven't alleged that and it's

11 unnecessary.

12         THE COURT:  All right.  Overrule your objection.

13         MR. PITTARD:  On page 12 after the instruction or

14 after the definition of "insider."  Insider includes, and it

15 goes 1 through 3, plaintiffs had requested an instruction in

16 there regarding what the jury can consider to determine the

17 insider status.  We submitted that language in our proposed

18 jury instructions and we object that that's not included.

19    It just provides the jury further instructions as to

20 how to determine who's an insider.

21         THE COURT:  Overruled.

22         MR. PITTARD:  On page 13, question number 4, in

23 the first -- the first paragraph, in connection with the HIG

24 transaction do you find by a preponderance of the evidence

25 that one or more of the defendants fraudulently

VOL 5

1  transferred.  After the word "transfer" plaintiffs request

2  the word "or received" be in there.  We object to that not

3  being included.

4       THE COURT:  Overruled.

5       MR. PITTARD:  In the instruction underneath that

6  same question it says defendant fraudulently transferred, in

7  the second line we requested that the words "or received" be

8  added in.  We object to that not being included.

9       THE COURT:  Overruled.

10       MR. PITTARD:  Also in the instruction the court

11  removed the language that used to state in answering this

12  question you are instructed that if a party has the right to

13  receive in the future the assets but has not yet received it

14  is the same as actually receiving it.  We object to that not

15  being included because the constructive receipt of assets

16  constitutes having received them for purposes of fraudulent

17  transfer.

18       THE COURT:  All right.  Overruled.

19       MR. PITTARD:  Question number 5, page 14, Your

20  Honor, we object to this question because this is under

21  Section 24.002, it's a defensive issue that the defendants

22  have the burden on which switches the burden of proof to the

23  plaintiffs which is an improper switch of the burden of

24  proof since they have the burden on their defenses.

25       THE COURT:  Overruled.  But I am adding a question

1   mark after the question number 4.

2          MR. PITTARD:  After question number 4?

3          THE COURT:  After the term "Question Number 4"

4   there needs to be a question mark.

5          MR. PITTARD:  Okay.

6      On page 17, Your Honor, plaintiffs object that in

7   regards to question number 7 that there is not a -- the

8   question does not concern or include an answer blank for

9   Sagaponack and Weisman concerning fraud committed against

10  the plaintiff.

11         THE COURT:  Overruled.

12         MR. PITTARD:  Your Honor, on page 18 the defense

13  of laches, plaintiff objects to this being submitted to the

14  jury because there's no evidence to support the defense of

15  laches.

16     Specifically, there's no evidence that the defendants

17  changed their position to their detriment.  There's also no

18  evidence that the plaintiffs unreasonably delayed in

19  asserting their rights.

20         THE COURT:  Overruled.

21         MR. PITTARD:  Page 21, Your Honor, question number

22  9, the plaintiffs object that this has not been submitted as

23  two separate questions.  For exemplary damages on --

24  conditioned on a positive answer to number 4 and exemplary

25  damages based on an affirmative answer to question number 7.

1    We think that it should be submitted as two separate

2 questions, that way there's no confusion on appeal as to

3 which cause of action supported the award of exemplary

4 damages.

5         THE COURT:  Overruled.

6         MR. PITTARD:  Your Honor, that concludes

7 plaintiffs objections.

8         THE COURT:  All right.

9    Ms. Liukonen.

10        MS. LIUKONEN:  Thank you, Your Honor.

11   The defendants will object to the inclusion of question

12 1 and would rather request that the court include an

13 instruction or commenting on its construction of the

14 agreements at issue in this case as we believe they're

15 unambiguous and there's no pleading of ambiguity.

16   And the court should include an interpretation of the

17 agreements because if an instrument is unambiguous -- or if

18 it's ambiguous but parole evidence of circumstances is

19 undisputed construction of the instrument is an issue for

20 the court.

21   We believe that the construction of the agreements,

22 notably the purchase agreement, the subordination note, and

23 the subordination agreement in this case are all unambiguous

24 and they should not be submitted to the jury.

25        THE COURT:  Question number 1?

Page 35

1   definition as being no factual basis for it and confusing to

2   the jury.  There hasn't been any evidence relating to

3   special knowledge and number 5 under misrepresentation.

4          THE COURT:  Overruled.

5          MR. DENNIS:  We would also object to the

6   instructions related to a duty to disclose.  We think that

7   that's a legal question as to whether a duty to disclose may

8   arise and that's not proper to submit to the jury.

9      We also don't think that the plaintiffs have alleged a

10  valid failure to disclose obligation and we don't think

11  there's any factually sufficiency either, so legally and

12  factually deficient on the failure to disclose.

13         THE COURT:  Overruled.

14         MR. DENNIS:  And we would finally object that

15  common law fraud should not be submitted to the jury because

16  the attorney for the plaintiff has already admitted the

17  underlying bases, so there's no factual sufficiency.

18         THE COURT:  Overruled.

19         MR. DENNIS:  Moving to page 19.

20         THE COURT:  Yes, sir.

21         MR. DENNIS:  I'm trying to get through this

22  quickly.

23     We would object to in the first paragraph, second and

24  third sentences, the parties have stipulated to the amount,

25  if any at all, of the actual compensatory damages therefore

1   you will not be asked to award a specific amount of actual

2   or compensatory damages.

3        We do not agree that we have stipulated to the amount

4   of actual compensatory damages.  We have stipulated to the

5   new principal amount of the note, nothing else.

6        And what we suggest to cure that error is to either

7   remove that language and include a damages question for both

8   the breach of the period income statement and the breach for

9   the common law fraud.

10        THE COURT:  I did do a -- didn't I do a separate

11   one for breach of the period income statement?

12        I'm trying to remember if I did or not.

13        MR. DENNIS:  Your Honor, I don't believe you did.

14   No, Your Honor, not in the draft that I have.

15        THE COURT:  I thought we had added that.

16        THE CLERK:  Huh-huh.

17        THE COURT:  Oh, this is the one where about the

18   date -- it's y'all's position that you only have attorney's

19   fees as damages here, correct?

20        MR. GUILLOT:  Correct, Your Honor.

21        THE COURT:  And you're willing to stipulate for

22   the record that that's the only damages that you have?

23        MR. GUILLOT:  Yes, Your Honor.

24        THE COURT:  So that's why I'm not submitting a

25   question on that.

00188a60-bbc5-11d9-9d0a-d2c50b54fb31

1          Number two, it's an incomplete definition.  The

2    definition of "good faith" under the UCC goes on to say or

3    fairness -- fairness under reasonably -- under reasonable

4    commercial standards.

5          So we would first object that that's included.

6          We would secondly object that it's incomplete.

7          Third, we have previously submitted to the court that

8    under Texas Court Supreme precedent Hawes that Texas courts

9    have defined "good faith" in the context of fraudulent

10   conveyance to mean that the transferee does not receive

11   assets in excess of their debt and that there's no secret

12   agreement to benefit the debtor.  So we would object on

13   those basis.

14         THE COURT:  Overruled.

15   I don't remember you giving me the Hawes case but maybe

16   you did.

17         Did y'all give me the Hawes case?

18         MR. DENNIS:  Yes, we did, Your Honor.  I guess we

19   attached it to our summary judgment briefings --

20         THE COURT:  Okay.

21         MR. DENNIS:  And we attached it to the directed

22   verdict.

23         THE COURT:  Maybe you did, I just didn't see it.

24         MR. DENNIS:  And we cited it in our proposed jury

25   instructions.

00188a60-bbc5-11d9-9d0a-d2c50b54fb31