IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BILLY J. MULLINS, JR., and     §
FARAWAY ENTERPRISES, INC.,     §
    §
       Plaintiffs,     §
    §
v.     §       Civil Action No. 3:02-CV-0106-K
    §
TESTAMERICA, INC., et al.,     §
    §
       Defendants.     §

<u>MEMORANDUM OPINION AND ORDER</u>

The Court enters this Memorandum Opinion and Order in conjunction with the Final Judgment signed this same day.  At the close of Defendants' case, the Court ruled on the Defendants' motion for directed verdict, granting in part and denying in part.  The Court found that: (1) Plaintiff Billy Mullins had no individual damages; (2) Defendant Marc Weisman was not the alter ego of Defendant Sagaponack Partners; (3) there were no sustainable claims against Defendant Tom Barr; and (4) Texas law does not provide for a claim of conspiracy to fraudulently transfer funds. The Court denied all other of Defendants' requested relief.  The case was submitted to the jury after closing arguments.  The jury returned a verdict for Plaintiff Faraway Enterprises ("Plaintiff") on all grounds and awarded punitive damages against all Defendants.  (The jury charge instructed the jury that the Court would assess actual damages.)  Thereafter, Plaintiff moved for entry of judgment.  With complete briefing

from the parties, the Court conducted a hearing on the motion.  After careful review of the issues, the Court has reconsidered its previous denial of Defendants' motion for directed verdict on certain grounds.  For the following reasons, the Court enters the following memorandum and opinion, in part notwithstanding the jury's verdict.

A.    Construction of Contracts as Matter of Law

TestAmerica and Plaintiff executed an Asset Purchase Agreement, an 8% Convertible Subordinated Note, and a Subordination Agreement (collectively "Note and Agreements") for the sale of Plaintiff's company to TestAmerica.  The Note and Agreements set forth the terms of the sale, including the purchase price, the amount TestAmerica paid Plaintiff up-front, the remaining amount TestAmerica owed Plaintiff and the applicable interest rate on that amount, the payment structure, and the subordination schedule.  In its post-verdict briefing, Defendant TestAmerica contends that because (1) both sides stated the contracts were unambiguous, (2) Plaintiff did not plead ambiguity, and (3) Plaintiff's chief complaint was that Sagaponack was paid before Plaintiff, the contracts should have been construed as a matter of law in favor of TestAmerica.

Regarding the Note and Agreements, the Court submitted the following questions of fact to the jury: (1) Question No. 1 asked whether Plaintiff had agreed to be subordinate to every other of TestAmerica's creditors, in essence whether version 6 or version 7 of the Subordination Agreement was the agreed-upon version of that document; (2) Question No. 2 asked whether TestAmerica breached the Note

and Agreements in failing to provide Plaintiff with a period income statement; and

(3) Question No. 3 asked whether TestAmerica breached the Note and Agreements

in failing to make principal and/or interest payments.

To resolve the issue of whether version 6 or version 7 of the Subordination

Agreement was the document agreed to by the parties, the Court submitted Question

No. 1 as requested by Defendants.  Question No. 1 asked the jury whether Plaintiff

agreed to be subordinate to all other of TestAmerica's creditors, including unsecured

creditor Sagaponack, whether existing at the time the Agreements and Note were

signed or thereafter created, and instructed the jury that TestAmerica bore the

burden of proof on this issue.  TestAmerica itself submitted this question in its

proposed jury instructions as Question 1.  During the charge conference, TestAmerica

argued to the Court that this question needed to be asked first because it could

resolve the entire case if the jury agreed with TestAmerica that Plaintiff was

subordinate.  The Court agreed with TestAmerica.  By virtue of their answer, the jury

found in favor of Plaintiff on this issue, agreeing with Plaintiff's argument that

version 6 was the correct version.

TestAmerica now argues the Court should have construed the contracts as a

matter of law and the Court erred in submitting this to the jury.  TestAmerica is

mistaken.  The jury was not asked to interpret the terms of the Subordination

Agreement, or the terms of version 6 compared with version 7.  The jury was asked to

find if Plaintiff was subordinate to all other of TestAmerica's creditors in right of

payment.  Plaintiff asserted a breach of contract claim against TestAmerica for failure to make the payments required under the Note and Agreements.  In support, Plaintiff provided version 6 of the Subordination Agreement as the version to which Plaintiff and TestAmerica agreed, establishing that Plaintiff was subordinate only to the three secured senior lenders specifically listed in the body of the Subordination Agreement. To establish why TestAmerica had not paid Plaintiff as provided for under the Note and Agreements, TestAmerica argued the parties had agreed to version 7 of the Subordination Agreement, in which Plaintiff was also subordinate to Sagaponack as provided for in the subordination schedule.  In addition, both sides presented witnesses supporting their positions.  It was the jury's duty as factfinder to determine which version was the true agreement.  In answering Question No. 1, the jury agreed with Plaintiff that version 6 was the agreed-upon version.  This question was not dependent on interpreting any terms of either version of the Subordination Agreement.  The jury was charged with weighing the evidence and credibility of the witnesses in finding which version indeed was the agreed-upon version.

As the jury was instructed, TestAmerica bore the burden of proving that Plaintiff's right to payment was subject to the full and prior payment of all of TestAmerica's other creditors.  This was a defensive issue, that TestAmerica was not obligated to pay Plaintiff under the contracts because Plaintiff's right to payment was completely subordinated to the prior full payment to all other of TestAmerica's creditors.  *See Gorman v. Life Ins. Co. of North America*, 811 S.W.2d 542, 546 (Tex.

1991)(affirmative defense establishes independent reason why plaintiff should not recover on its cause of action, and is one of avoidance rather than a defense of denial); *Coulson v. Lake L.B.J. Mun. Utility Dist.*, 734 S.W.2d 649, 652 (Tex. 1987)(party who raise affirmative defense to defeat recovery under contract bears burden of proof).

The jury also had to determine whether TestAmerica breached the Note and Agreements.  In Question No. 2, the jury found that TestAmerica did breach the Note and Agreements in failing to provide Plaintiff with a period income statement. In Question No . 3, the jury found that TestAmerica did breach the Note and Agreements in failing to make interest and/or principal payments under the terms. Again the jury was not asked to interpret the terms of the Note and/or Agreements; simply whether the period income statement had been provided and whether payments had been made.  TestAmerica argues that Question No. 3 involves the issue of whether Sagaponack was rightly paid ahead of Plaintiff, which would involve interpretation of the terms of the Subordination Agreement.  This, however, was not the question asked of the jury.

Despite TestAmerica's arguments to the contrary, these issues did not involve interpreting the terms of the Note and/or Agreements.  The questions were properly submitted to the jury as being within the domain of the factfinder to determine (1) whether version 6 or version 7 was the document agreed to by the parties, (2) whether TestAmerica failed to provide a period income statement, and (3) whether

TestAmerica failed to make the principal and/or interest payments.  These were fact issues dependent upon the evidence and credibility of the witnesses presented to the jury.

B.      Actual Damages

The jury was instructed the Court would assess the actual damages in this case. The Court assessed these damages because the new principal amount owed Plaintiff on the Note and Agreements was settled in arbitration and affirmed by this Court, and the amount transferred was stipulated to by the parties.

1.      *Period Income Statements*

The jury found TestAmerica failed to comply with the terms of the Agreement and/or Note in failing to provide Plaintiff with a period income statement.  The Court upholds the jury's finding on this breach.  However, the Court cannot enter a judgment at this time awarding actual damages for this breach.  In its motion for entry of judgment, Plaintiff contends the actual damages for this breach are $46,999.79, although there is no explanation for this amount.  During the jury charge conference, the Court specifically addressed the issue of submitting a separate damages question regarding the breach related to the period income statements.  At that time, Plaintiff stipulated on the record that the only actual damages it suffered and was seeking for this breach were attorneys' fees.  The Court, therefore, will not award the requested amount of $46,999.79.  Instead, the issue of attorneys' fees will be addressed at a later date after the submission of briefing by the parties.

2.      *Arbitration Award for Amount Owed Under Note and Agreements and*

        *Applicable Interest Rate*

The amount of $2,233,102.80 was awarded against TestAmerica during

arbitration and affirmed by this Court.  This is the amount owed Plaintiff under the

Note and Agreements.  This is also the amount the parties agreed to be actual

damages if there were any.  During the jury charge conference, Defendants stipulated

to this amount as the new principal amount.  In the motion for entry of judgment,

Plaintiff contends this amount, once calculated with interest, is $4,921,743.95

(through March 2005), and asks that such amount be awarded by the Court.

Plaintiff's calculation uses both the contractual 8% interest as well as the contractual

15% default interest rate.  In Plaintiff's reply brief, the judgment amount requested

from Plaintiff changes to $4,237,667.89, as calculated with interest (through June

2005).

The Court concludes Plaintiff has incorrectly calculated both amounts.  First,

is appears Plaintiff calculated the amounts using compound interest.  Upon review of

the Agreement, the Court could find no provision for compounding interest.  The

Agreement provides, "Interest on the principal amount . . . shall accrue . . . per

annum."  Plaintiff has provided no support or authority for an award using

compound interest, and the Court could find none.

The Court also concludes Plaintiff incorrectly applied the 15% default interest

rate in its calculation.  The jury did find that TestAmerica breached the Note and

Agreements in failing to make principal and/or interest payments.  However, there is

no jury finding as to when the breach occurred.  There is more than one possibility as

to when the breach could have occurred which Plaintiff even points out to the Court.

Without a jury finding of a specific date of breach, there is no point at which the

Court can appropriately apply the 15% default interest rate.

Despite the absence of a specific jury finding, Plaintiff argues the jury's

affirmative answer to Question No. 3 establishes the default date as January 1, 2001,

after TestAmerica failed to make the second interest payment.  The Court does not

agree with Plaintiff.  Question No. 3 is a more global question, asking whether

TestAmerica failed to comply with the terms of the Agreements and Note; it does not

reference any specific date as to when this breach occurred.  As the instruction to

Question No. 3 indicated, Plaintiff bore the burden of establishing the date of the

breach.  There is no stipulated fact as to the date it occurred and the jury did not

make a specific finding on this.  It would be inappropriate for the Court to make such

a factual determination in place of the jury merely because Plaintiff did not secure

such a finding in the jury charge.

The effect of failing to find that date does not negate the jury's finding there

was a breach.  However, because the Court will not decide the default date in place of

the factfinder, the Court concludes the appropriate option is to apply the contractual

8% interest rate to the new principal amount of $2,233,102.80, which is to be

calculated annually beginning December 31, 1999, as provided for in the contract.

As calculated by the Court, with a $160,000 credit for the first interest payment that was made, the amount owing Plaintiff under the contract from TestAmerica is $3,249,734.42.

| | | |
|---|---|---|
| | $2,233,102.80 | New principal amount |
| + | $1,176,631.62 | 8% interest accruing Dec. 31, 1999 through August 2, 2006 ($178,648.22/year) |
| – | $160,000 | Credit for first interest payment made |
| | $3,249,734.42 | Amount owing under Note and Agreements |

3. *TUFTA*

In 1998, TestAmerica purchased Plaintiff's company, METCO. At some point, TestAmerica defaulted on its Note and Agreements with Plaintiff. In 2003, TestAmerica sold substantially all of its assets to a group, the HIG entities. This transaction amounted to $33,545,650 in cash (in addition to stock). From this transaction, Sagaponack was paid at least $3,202,800. In Question No. 4, the jury found all the Defendants fraudulently transferred money during the HIG transaction.

Chapter 24 of the Texas Business and Commerce Code ("TUFTA") addresses fraudulent transfers. When a fraudulent transfer has occurred, section 24.008(a) provides for the following remedies for creditors: (1) avoidance of the transfer to the extent necessary to satisfy the creditor's claim; (2) attachment or other such remedy against the asset transferred or other property of the transferee; or (3) subject to principles of equity (a) injunction against further disposition by the debtor or a

transferee, (b) appointment of a receiver to take charge of the asset transferred or of other property of the transferee, or (c) other equitable relief.  TEX. BUS. & COM. CODE ANN. § 24.008(a) (Vernon 2002).  When a transfer is voidable under section 24.008(a)(1),  "Judgment may be entered against (1) the first transferee of the asset . . . or (2) any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee."  TEX. BUS. & COM. CODE ANN. § 24.009(b) (Vernon 2002).

        a.  Liable Defendants under TUFTA

        In this case, the jury found all Defendants liable under TUFTA.  Sections 24.008(a)-(b) and 24.009(b) clearly allow a creditor to obtain relief from the debtor and/or the transferee in the fraudulent transfer.  TEX. BUS. & COM. CODE ANN. §§ 24.008(a)-(b) & 24.009(b) (Vernon 2002).  There is no dispute that Sagaponack received money in relation to the fraudulent transfer and, therefore, could be considered a transferee under TUFTA by the jury.  There is also no dispute that TestAmerica could be considered a debtor under TUFTA by the jury.  As established at trial, TestAmerica still owed money to Plaintiff under the Note and Agreements. There is an arbitration award, affirmed by this Court, establishing a principal amount of $2,233,102.80 owed by TestAmerica to Plaintiff.  Therefore, Sagaponack is a transferee and TestAmerica a debtor under TUFTA.  The Court cannot, however, find support for the jury's finding that Marc Weisman was liable under TUFTA.

        Plaintiff contends Marc Weisman was a transferee, not a debtor.  No evidence

was presented that Marc Weisman received any money from the transfer, a fact Plaintiff concedes.  Plaintiff maintains Marc Weisman is still a transferee even if he did not actually receive any money because: (1) he has a right to a distribution of a percentage of the proceeds as a result of being a general partner of Sagaponack; and (2) he has constructive possession and control over the money, presumably also because of his general partner status.

1) Judicial Admission

Plaintiff's arguments rest on the premise Marc Weisman is a general partner of Sagaponack, a fact that was not established at trial either by evidence or a jury finding.  Plaintiff argues that Marc Weisman judicially admitted he was the general partner of Sagaponack; therefore, Plaintiff was relieved of the burden of proving this fact this and no jury finding was required.  The Court does not agree with Plaintiff's argument.

Plaintiff argues Marc Weisman judicially admitted three times that he is the general partner of Sagaponack in various summary judgment briefing to the Court.  A judicial admission is a "formal concession in the pleadings or stipulations by a party or counsel, that is binding on the party making them" and which must have been made "intentionally as a waiver."  *Martinez v. Bally's Louisiana*, 244 F.3d 474, 476 (5th Cir. 2001); *see White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983)("Normally, factual assertions in *pleadings and pretrial orders* are considered to be judicial admissions conclusively binding on the party who made them.")(emphasis

added).  The Court could find no Fifth Circuit case addressing whether statements in

a brief or other memoranda to the court can constitute judicial admissions.  However,

the Fifth Circuit has stated that "pleading" is defined by Federal Rule of Civil

Procedure 7(a).  *See Zaidi v. Ehrlich*, 732 F.2d 1218, 1219-20 (5th Cir. 1984).  A

"pleading" under this rule is a complaint, answer, reply to counterclaim, answer to

cross-claim, third-party complaint, third-party answer, or reply to an answer if

ordered by the court.  FED. R. CIV. P. 7(a).  The Fifth Circuit stated that the

definition of "pleading" under Rule 7(a) does not include "a motion to dismiss or

motion for summary judgment."  *Zaidi*, 732 F.2d at 1219-20.  Two documents

Plaintiff contends contain this judicial admission are Weisman's brief in support of

his motion for summary judgment and his corrected brief in support.  These do not

meet Rule 7(a)'s definition of "pleading."  *See id.*  Neither then would a responsive

brief, which is the third document Plaintiff contends contains the judicial admission.

The *Zaidi* case is clear that these documents cannot be considered pleadings.  *See id.*

However, even if these documents could be considered "pleadings," the

statements must have been made intentionally as a waiver.  *See Martinez*, 244 F.3d at

476.  The Court concludes there are inconsistencies within Marc Weisman's briefs

which do not support the argument Marc Weisman intended to waive this issue and

release Plaintiff from proving this fact.  *See Metropolitan Life Ins. Co. v. Daftary*, No.

Civ. A 3:03-CV-1128-D, 2004 WL 1960101 (N.D. Tex. 2004) (Fitzwater, J.).  There

is a separate statement within the briefs that Marc Weisman  "is a non-managing

member of a non-managing member of the general partner of Sagaponack." This directly contradicts the statement that he is the general partner of Sagaponack.  In addition, these statements that Marc Weisman is the general partner of Sagaponack are all supported by citations to Marc Weisman's deposition in which he testifies that he is not the general partner of Sagaponack.  Also undercutting the argument the statements were intentionally made as a waiver, Marc Weisman has consistently asserted throughout this case, including at the trial, that he is not the general partner of Sagaponack.  The Court is not left with the impression that these statements were made intentionally as a waiver and concludes, therefore, they were not.  *See id.*

These statements would also fail on the basis that they could not meet the five prong test outlined by the Fifth Circuit in determining whether a statement is a judicial admission.  *See Heritage Bank v. Redcom Laboratories*, 250 F.3d 319, 329 (5th Cir. 2001).  A statement must (1) be made in a judicial proceeding, (2) be contrary to a fact essential to the theory of recovery, (3) be deliberate, clear, and unequivocal, (4) such that giving it conclusive effect meets with public policy, (5) about a fact on which judgment for the opposing party can be based.  *Propath Servs. v. Quest Diagnostics*, No. Civ. 3:00-CV-2391-H, 2002 WL 535056, *7 (N.D. Tex. 2002)(Sanders, J.)(citing *id.*).  The Court concludes the statements in this case would fail on prong three, at least, because they cannot be considered deliberate, clear, and unequivocal for the same reasons they cannot be considered having been intentionally made as discussed *supra*.

ORDER – PAGE 13

The Court, therefore, concludes that these statements, for several reasons, do meet the definition of judicial admission. Therefore, Marc Weisman cannot be considered the general partner of Sagaponack by virtue of these statements being a judicial admission.

Plaintiff did not meet its burden in establishing that Marc Weisman is a transferee and therefore liable under TUFTA; there is no support for the jury's finding on this issue. *See Rouillier v. Illinois Cent. Gulf R.R.*, 886 F.2d 105, 108 n.2 (5th Cir. 1989) (court must uphold jury's factual findings unless facts and inferences are so strongly in favor of one party that court believes reasonable men could not come to a contrary verdict). Defendants Sagaponack and TestAmerica are, however, still liable under TUFTA in accordance with the jury's findings.

b.  Actual Damages Available under TUFTA

As previously outlined, section 24.008(a) provides for the following remedies for creditors when a fraudulent transfer has occurred: (1) avoidance of the transfer to the extent necessary to satisfy the creditor's claim; (2) attachment or other such remedy against the asset transferred; or (3) subject to principles of equity (a) injunction against further disposition by the debtor and/or transferee, (b) appointment of a receiver, or (c) other equitable relief. TEX. BUS. & COM. CODE ANN. § 24.008(a) (Vernon 2002).

The Court concludes that the appropriate remedy under TUFTA in this case is avoidance of the transfer. When the transfer is voided, section 24.009(b) provides

that the creditor may recover a judgment <u>against the transferee</u> for the value of the asset transferred or the amount necessary to satisfy the creditor's claim, whichever is less.  TEX. BUS. & COM. CODE ANN. § 24.009(b) (Vernon 2002) (emphasis added). TestAmerica was a debtor at the time of the transfer, not a transferee.  *See id.* ("The creditor may recover a judgment <u>against the transferee</u>. . . .")  Consequently, the judgment for actual damages under TUFTA can be entered against Sagaponack, the transferee, only.

Sagaponack argues this issue should have been submitted to the jury and Plaintiff should not be awarded actual damages under TUFTA because there is no way to ascertain which is the lesser amount Plaintiff could recover because there was no jury finding of (1) the actual amount transferred to Sagaponack from Fleet or (2) any damages Plaintiff suffered because of the transfer.  Plaintiff contends that Sagaponack stipulated in the jury charge to the amount of the transfer, therefore, there was no issue to submit to the jury.  The Court agrees with Plaintiff.  Stipulated fact number 18 states, "Fleet assigned or directed payment to Sagaponack in the amount of at least $3,202,800 from the sale proceeds of the TestAmerica assets to HIG."  This stipulated fact sets the minimum amount of the transfer.  The jury then found that the transfer of at least $3,202,800 was fraudulent.  Although the transfer could have been more than $3,202,800, this is the amount on which the jury made its findings that the transfer was fraudulent, which the Court will consider to have been transferred, and for which Sagaponack could be liable as the amount

fraudulently transferred.  Sagaponack's second argument that there is no evidence of damages Plaintiff suffered as a result of the transfer also does not persuade the Court.

Section 24.009(b) permits a creditor to recover either the value of the asset transferred <u>or</u> the amount necessary to satisfy the creditor's claim, whichever is less. *See* TEX. BUS. & COM. CODE ANN. § 24.009(b) (Vernon 2002) (emphasis added). Both of these amounts have been established by the evidence.  There is an arbitration award, affirmed by this Court, establishing the new principal amount owed Plaintiff as a result of TestAmerica's breach of contract.  This amount of $3,249,734.42 (including interest)  will satisfy Plaintiff's claim.  And the Court established that the amount transferred was $3,202,800.

As previously set forth, section 24.009(b) provides that Plaintiff can recover the lesser of either the amount transferred or the amount owed Plaintiff.  The amount transferred, $3,202,800, is clearly the lesser amount.  Plaintiff, therefore, may recover actual damages under TUFTA against Sagaponack for $3,202,800.  *See* TEX. BUS. & COM. CODE ANN. § 24.009(b) (Vernon 2002).

Sagaponack contends that if the transfer is voided, an issue arises as to how to redistribute the money.  Sagaponack argues because there was no jury finding as to priority of payment between Plaintiff and Sagaponack, the Court should redistribute the money according to percentage of debt owed.  The Court does not agree and concludes that Plaintiff will receive the entire amount.  Question No. 1, Defendants' proposed question, asked the jury whether Plaintiff agreed to be subordinate to all

other of TestAmerica's creditors.  The jury found that TestAmerica did not meet its

burden of proof and that Plaintiff had not agreed to be subordinate to every creditor

of TestAmerica.  Sagaponack argues the jury's answer to Question No. 1 ascertained

only that Plaintiff was not behind Sagaponack, leaving the possibility that Plaintiff

could have been equal in rights to Sagaponack.  The Court disagrees.  As the Court

has previously explained, it was TestAmerica's burden to prove that Plaintiff's right

to be paid was subject to the prior full payment of all other of TestAmerica's

creditors.  There was no alternative argument proposed or submitted that Sagaponack

and Plaintiff were equal in rights.  It was TestAmerica's burden to prove any defense

of avoidance under the contract.  *See Gorman*, 811 S.W.2d at 546 (Tex.

1991)(affirmative defense establishes independent reason why plaintiff should not

recover on its cause of action, and is one of avoidance rather than a defense of

denial); *Coulson*, 734 S.W.2d at 652 (Tex. 1987)(party who raise affirmative defense

to defeat recovery under contract bears burden of proof).  The jury's answer to

Question No. 1establishes that the jury believed Plaintiff had not agreed to be

subordinate to anyone other than the three secured senior lenders listed in the body

of the Subordination Agreement.

    During the charge conference, Plaintiff objected to the submission of this

question as the first question in the charge.  Defendants responded that failure to

include this as the first question could potentially cause inconsistencies within the

verdict, therefore, this question needed to be answered by the jury as a predicate to

the liability questions.  Now, Sagaponack argues in post-verdict briefing that this question does not establish the very fact they sought as the predicate for liability.

The Court concludes the appropriate remedy is voiding the fraudulent transfer. The amount transferred, $3,202,800, must be returned in full to the Court's registry, and that money will then be distributed entirely to Plaintiff.

5.  *Joint and Several Liability*

The amount of actual damages recoverable by Plaintiff for the breach is $3,246,308.27.  The amount of actual damages recoverable by Plaintiff for the TUFTA violation is $3,202,800.  The Court concludes TestAmerica and Sagaponack should be held jointly and severally liable for the amount of actual damages up to the amount of the transfer.  TestAmerica is then liable individually for the difference between the amount of the transfer and the amount owing under the Note and Agreements.  For the Court to hold otherwise would allow Plaintiff to essentially recover twice for its injury related to the amount owed under the Note and Agreements.  *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 441 (Tex. 1995) (Texas law does not permit a plaintiff to recover twice for same injury).  Therefore, TestAmerica and Sagaponack are jointly and severally liable for Plaintiff's actual damages up to the amount of $3,202,800, and TestAmerica is liable for the difference between that amount and the amount of the debt it still owes under the Note and Agreements.

C.  Punitive Damages

The jury assessed punitive damages for TUFTA violations against TestAmerica in the amount of $500,000 and Sagaponack in the amount of $1,000,000, and against TestAmerica for common law fraud in the amount of $350,000.  (Punitive damages were assessed against Marc Weisman for the fraudulent conveyance, but, as set forth above, there is no evidence of individual liability of Marc Weisman, so there can be no punitive damages.)

Defendants Sagaponack and TestAmerica argue punitive damages cannot be assessed against either Defendant because a predicate jury question was not submitted.  Texas law requires there be a jury finding of malice, wantonness, or other "reprehensible state of mind" before a jury can assess punitive damages.  *Forney Engineering Co. v. Cannon Computer Co.*, 553 S.W.2d 651, 652 (Tex. 1977); *see First City Bank v. Guex*, 659 S.W.2d 734, 741 (Tex. App.–Dallas 1983).  In this case, the terms "malice" and "fraud" were defined in the punitive damages section, but the jury was not asked to make a finding as to whether any Defendant acted fraudulently or with malice, wantonness, or other reprehensible state of mind before they awarded punitive damages.

While this predicate question is normally a prerequisite to an award of punitive damages, Defendants failed to object at the charge conference to the omission of this question.  *See Richard Rosen, Inc. v. Mendivil*, 2005 WL 3118005, *13 n.5 (Tex. App.–El Paso, 2005) (failure to object to omission of predicate malice

finding for punitive damages award precludes complaint on appeal); *Villareal v. Elizondo*, 831 S.W.2d 474, 477-78 (Tex. App.–Corpus Christi, 1992).  Regardless, the Court concludes there was clear and convincing evidence of fraud and/or malice presented at trial to support the jury's award of punitive damages against both TestAmerica and Sagaponack despite the absence of the finding.  *See Villareal*, 831 S.W.2d at 479.  The jury charge itself presents some evidence to support the award as the jury found in Question Nos. 4 and 7 both Sagaponack and TestAmerica acted fraudulently.

Sagaponack and TestAmerica also argue punitive damages are not provided for under TUFTA, only actual damages and attorneys' fees.  Section 24.008(a)(3)(c) provides for "any other relief the circumstances may require."  There appears to be a split among jurisdictions (most have adopted the Uniform Fraudulent Transfer Act) on this issue.  Some jurisdictions agree with TestAmerica and Sagaponack's argument, while some courts have found the language of section 24.008(a)(3)(c) is a "catch-all" provision which would allow for punitives.  *See DFS Secured Healthcare v. Caregivers Great Lakes*, 384 F.3d 338, 354 (7th Cir. 2004) (certified issue of whether IUFTA allows punitives to Indiana Supreme Court, citing split among states on this issue).  Although there is little guidance from Texas courts on this issue, a recent case out of the Fort Worth Court of Appeals provides some assistance.  In that case, the appellant specifically asked whether TUFTA authorized punitive damages.  *Chu v. Hong*, 2005 WL 2692464, *5-6 (Tex. App.–Ft. Worth, 2006, pet. filed).  Although

the court did not specifically answer the question, it did sustain the award of punitive damages under TUFTA on appeal.  *Id.* (court addressed instead burden for proving up punitives).

Making an *Erie* guess with the *Chu* case for guidance, the Court concludes the punitive damages against TestAmerica and Sagaponack for TUFTA violations are allowable under the catch-all language of section 24.008(a)(3)(c) which provides for "any other relief the circumstances may require."

_____1.  *Joint and Several Liability*

Plaintiff argues the Defendants should be held jointly and severally liable for the damages assessed against each.  The Court has already addressed this issue as it relates to the actual damages assessed; therefore, this section will address it in relation to punitive damages.

Plaintiff argues Marc Weisman should be held jointly and severally liable for any judgment entered against Sagaponack because he is a general partner.  As previously discussed, no evidence established Marc Weisman was the general partner, there was no jury finding on the general partner issue, and there is no judicial admissions of that.  Therefore, there is no basis for holding Marc Weisman jointly and severally liable for any judgment entered against Sagaponack.  Likewise, the Court can find no basis for holding Marc Weisman jointly and severally liable for a judgment entered against TestAmerica.

Plaintiff argues Sagaponack should be jointly and severally liable for any

judgment related to a TUFTA violation against TestAmerica and vice versa.  The Court concludes there is no basis on which to hold Sagaponack jointly and severally liable for punitive damages assessed against TestAmerica and vice versa. Furthermore, joint and several liability may not be applied to an award of exemplary damages under TEX. CIV. PRAC. & REM. CODE ANN. § 41.006 (West 1997).

D.     Attorneys' Fees

Attorneys' fees are specifically provided for in TUFTA.  TEX. BUS. & COM. CODE ANN. § 24.013 (Vernon 2003).  Attorneys' fees are also provided for under Texas law for breach of contract.  TEX. CIV. PRAC. & REM. CODE ANN. § 38.001.  The Court concludes TestAmerica and Sagaponack will be held jointly and severally liable for attorneys' fees.  The Court will conduct a hearing on this issue at a later date.

E.     Conclusion

For the foregoing reasons, the Court enters the final judgment dated this same day, in part in accordance with the jury's verdict and in part notwithstanding the jury's verdict.

        **SO ORDERED.**

Signed August 2nd, 2006.


_Ed Kinkeade_
_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE